STATE *ex rel*. MISSOURI STATE BOARD OF AGRICULTURE, Relator, *vs*. THOMAS HOLLADAY, STATE AUDITOR, Respondent.

1. *State Entomologist—Act for annual payment to, of* $3,000, *unconstitutional*.— The act of March 23rd, 1870, whereby $3,000 was appropriated annually to the State Entomologist, in so far as it contemplated payment of the annuity for more than two years after the date of the act and without a biennial appropriation, became void on the adoption of the present constitution. (See §§ 20, 24, art. iv, and § 19, art. X.) These provisions are self-executing without ancillary legislation, and refer not merely to prospective appropriations, but to those existing at the adoption of the constitution.

The fact that schedule 6 of the constitution keeps the entomologist in office, does not affect his right to draw salary under the act.

*Application for Mandamus.*

*Geo. W. Taussig with H. M. Jones*, for Relator, cited: Sedgw. Const., 161, 164, 173 (2d. Ed).

*J. L. Smith*, for Respondent, cited: St. Joe. Board Pub. Sch. vs. Patten, 62 Mo. 450.

SHERWOOD, C. J., delivered the opinion of the court.

Argument has been heard touching this application for a *mandamus* against the State Auditor, who has refused to issue a warrant for the services of C. V. Riley, State Entomologist, during the current year commencing on the 23d ult. Reliance for the issuance of the writ is placed on the act of March 23d, 1870, whereby the sum of $3,000 is "appropriated annually" for the services of the last mentioned officer. On the other hand it is urged that recent and radical changes in our organic law have virtually repealed those statutory provisions whereon the petitioner relies; and this is the only point presented which goes to the merits of the present application.

Let us examine the grounds on which the assertion, offered in resistance to the issuance of the writ, is supposed to rest.

Section 20 of art. 4 of the Constitution, provides that "the general assembly shall meet in regular session once only in every two years."

Section 43 of the same article prohibits "money to be drawn from the treasury except in pursuance of regular appropriations made by law."

From a consideration of these two sections, it seems quite obvious that no appropriations of money find recognition in the constitution except "regular appropriations," and that such cannot be made except at regular legislative sessions, occurring biennially. This view of the matter receives abundant confirmation in the prohibitions of section 19 of article X, that " no moneys shall ever be paid out of the 'treasury 'of this State, or any of the funds under its management, except in pursuance of an appropriation by law ; nor unless such payment be made, or a warrant shall have issued therefor, within two years after the passage of such appropriation act, and every such law making a new appropriation or *continuing or reviving* an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied ; and it shall not be sufficient to refer to any other law to fix such sum or object," etc.

The act of March, 1870, is clearly inconsistent with the provisions of the constitution above quoted, and in consequence thereof, and in conformity with what the schedule ordains, the provisions of that act ceased when the constitution was adopted. For although the sections of the constitution just cited, do not in express and direct terms inhibit the auditor from drawing his warrant in favor of a claimant who relies on an appropriation more than two years old, yet those sections, by necessary and inevitable implication, accomplish the same result ; for it cannot, with any show of reason, be claimed that a warrant can be drawn without an appropriation ; but as just seen, no appropriation possesses any validity, force, or even existence, after the lapse of two years.

These provisions of the organic law are self-executive, and consequently need no legislation in their aid. (St. Joe. Board Pub. Schools vs. Patton, 62 Mo. 444.)

Immediately upon their adoption they became operative and effective, not only *prospectively*, but as to all *existing* appropriations. Any other construction than this would only partially abolish the evils and eradicate the mischiefs these constitutional provisions were designed to remedy. Because heretofore, owing to the number and variety of special appropriations hidden in nu-

merous and disconnected session acts, and extending during a long series of years, it was next to impossible, even after exhaustive care and research, to ascertain the precise financial *status* of the State. This shows very pointedly, as we think, the error of the idea which seeks to limit to future appropriations alone the operation of the constitutional provisions under discussion, the evident purpose of which was to show once every two years, by a general appropriation act *and at one connected view*, all sums for which the auditor during the next ensuing biennial period could be lawfully called upon to issue his warrant.

Whether, then, we consider the plain language of the fundamental law or, resorting to a very familiar rule of construction, reflect on "the old law, the mischief and the remedy," it seems plain, beyond question, that the auditor did but obey the constitutional mandate when refusing to issue his warrant. And if any doubt should still linger in the mind on this subject, that doubt will be quickly resolved in favor of the position we have assumed by examination of the debates in the convention which framed the constitution. When speaking of section 19, *supra*, Mr. Letcher observed: "In regard to the section, I desire to say that if I understand the object of it, *it is to keep the matter of appropriations close up together*. An appropriation made at one time, made we will say to-day, by law, and no warrant, for instance, issued for that appropriation until two years hence, we find that the State finances would be in such a condition that, unless we put some limit upon this thing, it will be almost impossible to know how the treasury does stand."

And commenting on the same section, Mr. Mudd said: "Now, the object of the committee was to restore to the general revenue the balances of the appropriations not applied at the end of every two years, so that each session of the General Assembly should make appropriations for the term during which they were elected, and not leave those appropriations open to be drawn upon at any time, which have been made by preceding General Assemblies. *It was to close up the books at least once every two years*, and then if any appropriation be made, let it be made by the General Assembly then in session."

The argument which has been advanced that as section six of the schedule continues Mr. Riley in office, that therefore he should be permitted to draw his pay does not at all affect the conclusion we have reached. If the legislature should fail to make appropriations for any other State officer, he might have a *moral* claim against the State for his services, but no legal method of redress. We shall deny the writ.

All the other judges concur.