Nott, Ch. J.,
delivered the opinion of the court:
The claimant brings this action to recover his pay as a captain of infantry upon the retired list. It is conceded that he *442 wan appointed to the office under the Act of 6th -June, 1900 (31 Stat. L., 554), and that he holds the office, and that he has not been paid the pay or salary of the office.
The first ground of defense rests upon what is termed a renunciation of the pay given by the claimant to the Paymaster-General as a condition to his receiving the salary of chief clerk of the Department of Agriculture. The so-called renunciation contains these words:
“ But this renunciation shall not operate to prevent me from testing in the proper courts or in any other legitimate way my right under the law to receive compensation from the appropriations of the Department of Agriculture while receiving-pay as an officer of the Army on the retired list, or my right, to receive pay as an army officer on the retired list while receiving compensation as chief clerk or employee of the Department of Agriculture. ”
There is nothing, therefore, in this defense. Where the salary or compensation of an officer or employee of the Government is by statute fixed and certain, other officers of the Government can neither increase it nor diminish it nor take it away.
Furthermore, the so-called renunciation can not possibly operate as an equitable estoppel. The claimant expressly' made his renunciation, by the same instrument, conditional upon his legal rights, and avowed his intention to assert them, and it is manifest that the officers of the Government intended to do nothing more than they propei’ly might do — reserve the question of legal right for the determination of the judiciary.
Here the case might technically stop.' The claimant is entitled to the pay of a captain of infantry on the retired list, he has not been paid, and the renunciation does not renounce the legal right to it. The counterclaim of the defendants, however, presents the real question in controversy. It is whether the claimant can receive the pay of an officer on the retired list and also the salary of the chief clerk of the Department of Agriculture.
The Comptroller of the Treasury decided that the claimant might receive the one but not the other — that he might forego the pay of a retired officer and receive the pay of chief clerk of the Department. The defendants’ counsel goes much fur *443 ther, and contends that the claimant can receive no compensation whatever as chief clerk of the Department of Agriculture; that if he holds the office and performs its duties, he must do so gratuitously; and that the difference between the pay of a retired officer, $1,755, and that of the chief clerk, $2,500, which has been paid to him may bo recovered back upon the defen dants’ counterclaim.
The adverse decision of the Comptroller of the Treasury stands exclusively on the Act 3d of March, 1885 (23 Stat. L., pp. 353, 356, sec. 2), which contains the following provision:
“That no part of the money herein or hereafter appropriated for the Department of Agriculture shall be paid to any person, as additional salaiy or compensation, receiving- at the same time other compensation as an officer or employee of the Government.”
But the subsequent Act 31st of July, 18,94- (28 Stat. Ii., pp. 162, 205, sec. 2), contains this provision:
“No person who holds an office the salary or annual compensation attached to which amounts to the sum of two thousand live hundred dollars shall be appointed to or hold' any other office to which compensation is attached unless specially heretofore or hereafter specially authorized thereto by law; but this shall not apply to retired officers of the Army or Navy whenever they may be elected to public office or whenever the President shall appoint them to office by and with the advice and consent of the Senate. ”
It was correctly held by the Comptroller of the Treasury that—
“The act of July 31,1894 (supra), when read in connection with that of June 6,1900 (supra), does not forbid the appointment of Mr. Geddes as a retired officer of the Army, and hence, in the absence of any contrary provision of law, does not make the payment of his salary in both places illegal. ”
That is to say, while the claimant was holding the office of chief clerk of the Department of Agriculture, with a salary attached thereto of $2,500 per annum, he was appointed an officer on the retired list by the President and confirmed by the Senate; and that appointment was specially authorized by the Act 6th June, 1900. (31 Stat. L., 551.) Hence the Comptroller, as before stated, grounded his decision exclusively upon the earlier statute of 1885.
*444 That statutory provision is a proviso to an appropriation, and its plain purpose is that no person in the Department of Agriculture, or out of the Department of Agriculture, who is receiving “ compensation as an officer or employee of the Government ” shall be paid additional compensation for additional service out of general funds appropriated for tire Department of Agriculture. Applying to no designated class of persons, it is a provision of law controlling appropriations for the Department by limiting the discretionary authority of the Secretary. The evil .against which it is directed is the practice of allowing additional compensation for additional service in that Department.
That limitation upon the power of the Secretary does not constitute a defense. An appropriation is the setting aside by Congress of a designated amount of public money for a designated purpose.
“ No money shall be drawn from the Treasury but in consequence of appropriations made by law.” (Const., Art. 1. sec. 9.)
The accounting officers are the guardians of the appropriations. It is their business to see that no money is paid out of the Treasury unless the payment is authorized by an appropriation act. It is not their business to adjudicate abstract questions of legal right beyond the legal right of a person to be paid out of a specific appropriation. An appropriation constitutes the means for discharging the legal clebtsAf the Government.
The judgment of a court has nothing to do with the means— with the remedy for satisfying a judgment. It is the business of courts to render judgments, leaving to Congress and the executive officers the duty of satisfying them. Neither is a-public officer’s right to his legal salary dependent upon an appropriation to pay it. Whether it is to be paid out of one appropriation or out of another; whether Congress appropriate an insufficient amount, or a sufficient amount, or nothing .at all, are questions which are vital for the accounting officers, but which do not enter into the consideration of a case in the courts. This lias been repeatedly held by the Supreme Court and this court, beginning with Graham's Case, in the first vol- *445 time of the Reports. (1 C. Cls. R., 380.) The appropriations made for all the Executive Departments, except that of the Department of Agriculture, are specific — so much for this object, so much for that. But it has been the legislative practice for some years to appropriate gross amounts for the Department of Agriculture, and at the same time to append the above limitation upon the power of the Secretary. The judgment of this court will not be paid out of that appropriation ; the limitation upon the power of the Secretary does not extend to the court; the real question before the court is that of the claimant’s legal right to receive the pay of both offices, irrespective of the statutes above quoted. All these questions were considered in Collins’s Case (15 C. Cls. R., 22), and are there exhaustively treated.
To bring a retired officer of the Army within the inhibition of the statute it is plain that he must be an “officer or emplo3ree of the Government” within its intent; that his unofficial life after retirement must be regarded, within the intent of the statute, as service; that his three-fourths retired pay must be “salary or compensation” for such service, it is well settled that an officer on the retired list owes no service to the Government in time of peace; that if called into service in time of war he returns thereby to the active list and receives full pay; that there is but one military office which he can hold — that of Superintendent of the Soldiers’ Home; and that his reduced retiied pay is but an honorary form of pension to be paid him when, having reached a certain age, it is presumed that he is no longer well fitted to render active service to the Government. (Hayden’s Case, ante, p. 39; Act 2d March, 1899, 30 Stat. L., p. 977, sec. 7.) If this officer on the retired list had been rendering service to the Government, and if his retired pay was intended as “compensation” for that service, and if the Secretary of Agriculture had intended to give to this retired officer “additional compensation,” to be paid out of the funds of his Department, the case would come within the purview of the statute. But there must be “^compensation ” received before there can be “ additional compensation” prohibited. As a matter of fact, the. pay of a retired officer is not compensation; and it follows as a matter of law that the salary of the chief clerk of the *446 Department of Agriculture was not “ additional compensation."’ The act of 1885, therefore, does not control the case.
The Supremo Court has said that a statute prohibiting an officer from receiving more than one salary can not" “by fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law or usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law."’ Converse v. United States (21 How., 463); United States v. Brindle (110 U. S., 688, 694); and this court has held ever since Collins’s Case (15 C. Cls. R., 22, 40) that the pajr of a retired officer “is not given as compensation for discharging the duties of anj^ office during the period for which it is to be paid, but rather as a bounty and in the nature of a pension for services to his country previously performed.” Under these decisions the claimant might legally hold both offices, and if he held them, receive the salaries of both. The duties or nonduties of a retired officer are not incompatible with the duties of a chief clerk in an executive department. The duties of an officer beyond seas would be incompatible with those of a retired officer liable to be called at any time into-active service. Congress have recognized the distinction by providing that a retired officer shall not receive his pay as s.uch while holding a diplomatic or consular office beyond seas, but have left the right of a retired officer to hold a civil office within the country unimpaired. Congress have prohibited onty officers “on the active list” from holding “any civil office” (Act 15th July, 1870, 16 Stat. L., 319; Rev. Stat., sec. 1222), and retired officers only from holding appointments in the diplomatic or consular service {Act 80th March, 1868; Rev. Stat., sec. 1223.) “Congress,”says the Supreme Court, “distinguished, and adhered to the distinction, between officers on both lists and officers on the active list only, and between ordinary civil appointments and appointments in the diplomatic or consular service. No officer, whether on the active or retired list, could accept appointment in the latter and remain an officer, but that rule was not applied to retired officers in the matter of holding a civil office. ” (Badeau v. United States, 130 U. S., 439, 449.)
*447 The judgment of the court is that the claimant recover |3,705, the amount of his pay-up to and including the 28th February, 1903, and that the counterclaim of the defendants be dismissed.