ROBERT J. COLEMAN, Trustee, Respondent and Cross-Appellant, v. KANSAS CITY, a Municipal Corporation, Appellant and Cross-Respondent.—Nos. 38151, 38152.—173 S. W. (2d) 572.

Division Two, June 7, 1943.

Motion for Rehearing or to Transfer to Banc in Per Curiam Opinion

Overruled, July 6, 1943.

*William E. Kemp,* City Counselor, *Arthur R. Wolfe* and *John J. Cosgrove,* Assistant City Counselors, for Kansas City, appellant.

*William G. Boatright, Harry L. Jacobs* and *James Daleo* for respondent.

TIPTON, J.—The respondent, as trustee, filed this action on behalf of numerous employees of the appellant to recover the difference between the salary received by each employee and the amount that he claimed they should have received under an ordinance fixing the salaries of its various employees from January 1, 1929, to May 1, 1939. The trial court found that 105 of the assignors were not entitled to recover, denied a recovery for any salaries beyond five years prior to the filing of this action, and allowed a recovery for non-ordinance salary reductions within the five-year period of the Statute of Limitations. Both appellant and respondent have appealed from that judgment.

A jury was waived, and at the request of both parties, the court made a statutory finding of facts and conclusions of law. Briefly, the essential facts as found by the court are as follows:

Each of respondent's assignors for which a recovery was allowed was a duly and legally appointed officer or employee of appellant, in conformity with the provisions of the City Charter and applicable ordinances, and each performed the duties and obligations required of him or her by virtue of such appointment. Appellant's Charter requires that salaries of its officers and employees be fixed by ordinance. This was done by what is referred to in the record as the Administrative Code of 1926 and 1933. During the period from November 1, 1930, to May 1, 1939, salary cuts were imposed upon these assignors by enforced ''Applications for Leaves of Absence.'' The leaves of absence were all obtained during the time H. F. Mc-Elroy was the appellant's City Manager. City officials and employees were held under constant threat that unless they signed applications for leaves of absence presented from time to time, and took salary cuts imposed, they would be discharged, but they were required to perform their duties during the forced leaves of absence. More detailed facts in reference to these leaves of absence may be found in the opinion in our case of State ex rel. Rothrum v. Darby et al., 345 Mo. 1002, 137 S. W. (2d) 532. Following our decision in that case, the trial court found the leaves of absence [574] void. Other essential facts will be stated in the course of this opinion.

The first contention made by the appellant as to why the judgment should be reversed is stated as follows: ''The liability of defendant (appellant) municipality for salaries of its employees is limited by the amounts appropriated by the Council for that purpose and the exhaustion of the salary appropriation makes the limit beyond which no liability can be imposed upon the City for salaries or wages.''

In other words, for the years involved in this action, the Council did make appropriations for the salaries of its officers and employees, but the appropriations were insufficient to pay them in full the amount as fixed by the ordinances that set their salaries, and, therefore, when the appropriation for these particular years was exhausted, the appellant was not liable for any balance due them under the salary schedule fixed by ordinance.

The appellant contends that to hold otherwise would violate Sections 85-94, inclusive, of Article IV, Charter of Kansas City. Briefly, these sections provide:

That the heads of the departments shall make a request to the City Manager in January of each year for the appropriations necessary for the departments for the fiscal year which begins on May 1st of each year (Sec. 85); that the annual budget shall be prepared by the City Manager and submitted to the Council not later than the first regular meeting in March (Sec. 86); that the Council shall pass the annual appropriation ordinance not later than the third Monday in April, and it may be increased or decreased, and that the Council

may pass ordinances making additional appropriations after the passage of the annual appropriation ordinance (Sec. 87); that the unencumbered balance appropriated for one purpose may be transferred to another purpose (Sec. 88); that 3% of the estimated revenue shall be placed in the contingent fund (Sec. 89); that the City Manager shall each three months compare the estimated revenues with actual revenues for the year to date, and report the facts to the Council (Sec. 90); that the Commissioner of Purchases of Supplies shall not furnish supplies, material, and "services other than personal" unless the Director of Finance makes a written statement that there is an unencumbered balance to the credit of the appropriation to pay for the same (Sec. 91); [Sec. 92 deals with contracts] that the Director of Finance is prohibited from issuing warrants unless there is an unencumbered and unexpended appropriation available for the payment of such warrants (Sec. 93); and that all warrants, agreements, or obligations contrary to these provisions are void (Sec. 94). The additional sections deal with financial reports, special assessments, loans, and bonds (Sec. 95 to Sec. 99).

We do not find anything in these provisions to sustain the appellant's contention. Under these provisions, the Council is prohibited from making total appropriations to exceed the total estimated revenue. The trial court found this prohibition was not violated. In view of our holding in the Rothrum case, supra, it is not contended that these assignors held their positions with appellant by virtue of a contract; nor did their rights to the salary as fixed by ordinance come within Section 91. Their services were not supplies or material, but were personal services. Section 93 does not limit the appellant's obligations, but is a direction to the Director of Finance as to how and when the City's obligations are to be paid.

The question before us is: Is the appellant liable to these assignors to pay them the salary fixed by ordinance, and not as to how they are to be paid. The ordinances fixing these salaries were passed pursuant to Charter provisions. (Section 470, Article 20.)

We think the exhaustion of appropriation defense, as relied upon by appellant, was, in effect, twice ruled against appellant in the Rothrum case, supra, and in the case of Coleman, Trustee, v. Kansas City, Missouri, 348 Mo. 916, 156 S. W. (2d) 644.

In the Rothrum case, the City contended that because there were insufficient funds to pay the last five months of the fiscal year, it could not be compelled to pay the relator, in view of Article IV, Sections 85 to 99, inclusive. While in the case at bar, appellant contends that because of the exhaustion of the appropriation, that under these same sections of the Charter, it is not liable to these assignors for their salaries fixed by ordinance. The contention was ruled against appellant in the Rothrum case.

·In the Coleman case, we said: "There may be circumstances under which the liability of a municipality for an expenditure is limited to the amount appropriated therefor, [575] but not under the facts of this case." (l. c. 647)

If the appropriation ordinances did not repeal the ordinance fixing the assignor's salaries, we are unable to understand how an appropriation ordinance that did not appropriate enough money to pay these salaries in full could have the legal effect of satisfying the City's obligation to pay the salaries as fixed by ordinance. The result in both contentions would be the same. We held in the Coleman case that the appropriation ordinance did not repeal the salary ordinance, and that ordinance governed the City's liability to its employees. To hold the appellant could limit its liability to the amount appropriated (which is less than the amount fixed by the salary ordinance) would, in effect, be holding the salary ordinances were repealed by the appropriation ordinance. We ruled to the contrary.

The case of Gill v. Buchanan County, 346 Mo. 599, 142 S. W. (2d) 665, was a suit by a county judge to recover the amount of his salary as fixed by statute. The county budget law was involved. That law is similar to the provisions of the Charter in question in the case at bar. In ruling the case, we said: "We, therefore, hold that a county court's failure to budget the proper amounts necessary to pay all county officers' salaries fixed by the Legislature, does not affect the county's obligation to pay them." (l. c. 668-669) It is true the county judge's tenure of office was fixed, while in the case at bar; these officers and employees could be discharged at will, but since they did perform the service in full for the period of time sued for, there can be no distinction between that case and this one.

In the case of Andrew Geddes v. The United States, 38 Ct. Cl. 428, l. c. 444, the Court said:

"Neither is a public officer's right to his legal salary dependent upon an appropriation to pay it. Whether it is to be paid out of one appropriation or out of another; whether Congress appropriated an insufficient amount, or a sufficient amount, or nothing at all, are questions which are vital for the accounting officers, but which do not enter into the consideration of a case in the courts."

See, also, United States v. Langston, 118 U. S. 389, 6 S. Ct. 1185; Magner v. City of St. Louis, 179 Mo. 495, 78 S. W. 782; State ex rel. Mulvoy v. Miller, 315 Mo. 41, 285 S. W. 504.

The appellant relies upon the case of State v. Weatherby, 344 Mo. 848, 129 S. W. (2d) 887.

In that case, we held it was unlawful for the respondent to be paid out of an appropriation to the Legal Department for services rendered by him as special attorney for the Insurance Department, but we did hold he was entitled to be paid for his services rendered to the Insurance Department. In the second appeal, reported in 350

Mo. 741, 168 S. W. (2d) 1048, we allowed him to recover from the appropriation of the Insurance Department. That case is not in point.

The appellant also relies upon the case of Thatcher v. City of St. Louis, 343 Mo. 597, 122 S. W. (2d) 915. In that case, we held the Attorney General was a necessary party in a suit concerning public charitable trusts, but neither he nor his special assistants could be paid a fee for their legal services out of the trust fund of the charitable trust. Their salaries as fixed by statute were not involved. We fail to see where that case sustains the appellant's position.

We have examined the other cases relied upon by the appellant and find they do not sustain its contention.

We conclude the appellant's contention on this point should be overruled, and hold that where salaries of officers and employees of a municipality are legally fixed by ordinance, they are entitled to be paid the rate of pay fixed by such ordinance for the services performed by them, and that is true irrespective of whether the legislative body of the municipality appropriates a sufficient, or insufficient sum, or nothing, to pay such salaries.

The next point raised by the appellant is, "The employees herein are estopped by laches from asserting claims for salary reductions except for the salary claims for the last four months of the fiscal year of 1938."

Appellant states the city officials were led to believe that no claims would be made or suit brought by employees for these salary reductions, and, acting on this belief, within the fiscal years 1931 to 1937, inclusive, the City issued large amounts of bonds for public improvements, including the building of a new City Hall, Municipal Auditorium, and other public improvements.

Assuming this to be true, this defense is not available to the appellant. The law is well settled in this State that it is against the public policy for employees of a municipal corporation to waive any part of their salaries lawfully fixed by ordinance. The acts relied upon to constitute laches by appellant were induced and caused by its own illegal and wrongful conduct, and to permit the doctrine of estoppel to be invoked, would allow appellant to accomplish indirectly what it could not do directly. State ex rel. Rothrum v. Darby, supra; Gill v. Buchanan County, supra; Reed v. Jackson County, 346 Mo. 720, 142 S. W. (2d) 862. The latter case distinguishes this case from the case of Galbreath v. City of Moberly, 80 Mo. 484, upon which appellant relies.

The trial court allowed interest from the date of filing this petition. In so doing, the court followed our decision in the case of Coleman v. Kansas City, supra. We have re-examined this question and adhere to our former ruling. Interest is allowed under Section 3226, R. S. (Mo.) 1939, on the theory that this is an action on an

account. An " 'account' is a generic term, difficult to define, . . . As used in a general sense, the term 'account' is equivalent to 'claim' or 'demand' . . . " 1 C. J. S. 571.

"The primary idea of an account, *computatio*, whether we look to the proceedings of courts of law or equity, is some matter of debt and credit, or demands in the nature of debt and credit, between parties. It implies, that one is responsible to another for moneys or other things, either on the score of contract or of some fiduciary relation, of a public or private nature, created by law or otherwise." Whitwell et al. v. Willard, 42 Mass. 216, l. c. 217-218.

To the same effect is the recent case McClellan v. City of St. Louis, 170 S. W. (2d) 131, decided by the St. Louis Court of Appeals.

The appellant, further, contends that "110 of the assignors in the instant suit joined with others in a suit by the First National Bank of Kansas City, as Trustee, for the recovery of unpaid salaries for the months of January, February, March, and April, 1939, in which suit judgment was rendered against the City and was paid, said 110 assignors herein thus having spent their cause of action, if they had any, and are hereby barred from recovery in the instant suit."

On this question, the court found that the First National suit was instituted by the appellant for the purpose of obtaining judgment against it so that judgment bonds could be issued for the purpose of paying its employees the salary admittedly due its officers and employees, and further found "That none of the assignors had anything to do with the bringing of said suit, or the arrangements for its institution or its prosecution and hired no attorneys and took no part in said suit."

The court also found that appellant represented to these assignors that the suit was a friendly suit and it was a mere routine and formality in order to place these claims in judgment in order to issue judgment bonds and further "it was defendant's (appellant's) intention and purpose that said suit be brought in the manner it was brought for its convenience and . . . consented to any splitting of the cause of action of any of the assignors that might otherwise exist . . . "

The "rule against splitting is for the protection of the debtor, he may waive its benefits by expressly or impliedly consenting to the institution of separate actions upon a single demand; . . . " 1 C. J., Section 280, Page 1109. See, also, Kavanaugh v. Shaughnessy, 41 Mo. App. 657; Gerhart v. Fout, 67 Mo. App. 423; 1 Am. Jur., Section 101, Page 484. Since the court found that the appellant had consented to splitting the cause of action, we overrule this contention.

The final point raised by appellant is that assignor Matthew S. Murray is not entitled to recover for the reason that while he was serving as a Director of Public Works, he was appointed State Ad-

ministrator of the Works Progress Administration and spent a great deal of his time attending to the latter position.

The Court found that Murray performed all of his duties as Director of Public Works while serving as State Administrator of the W. P. A. in a manner entirely satisfactory and acceptable to appellant, who had full knowledge that he served in the capacity as State Administrator of the W. P. A.

Appellant's contentions, as stated in its brief, are "that both by the State Constitution and the City Charter, Murray [577] was prohibited from holding these positions at the same time, and when he became State Administrator of the W. P. A., as a matter of law, he vacated the office of Director of Public Works."

It is Section 18, Article II, of the State Constitution, that appellant relies upon. It reads:

"That no person elected or appointed to any office or employment of trust or profit under the laws of this State, or any ordinance of any municipality in this State, shall hold such office without personally devoting his time to the performance of the duties to the same belonging."

This is an action for salary while Murray held the office as Director of Public Works. "In the first place, this is not an action in quo warranto, against the officer himself, to forfeit his office for failure to do his duty, and in which he would be entitled to his day in court to defend his character and his record and explain whatever action he has taken, . . . " State ex rel. McGaughey v. Grayston, 349 Mo. 700, 163 S. W. (2d) 335, l. c. 340. "Unless an office is abandoned or relinquished an officer is entitled to a trial on the charge of failing personally to devote his time to the performance of his duties. Such failure may be excusable. . . . it is a willful refusal to perform the duties of an office which works a forfeiture so that a judgment of ouster is necessary." State ex inf. McKittrick v. Wilson, 350 Mo. 486, 166 S. W. (2d) 499, l. c. 501.

It may be that his holding the position as State Administrator of the W. P. A. was grounds for his removal (a question we do not decide), yet, the fact remains that he did continue to hold the office of Director of Public Works and discharged all duties as such in a manner satisfactory to the appellant, and, of course, all his official acts during that time were legal. State ex rel. City of Jefferson v. Hackmann, 287 Mo. 156, 229 S. W. 1082.

During the time Murray held the office, he is entitled to the salary fixed by law as an incident to that office. "Compensation to a public officer is a matter of statute, not of contract; and it does not depend upon the amount or value of services performed, but is incidental to the office." State ex rel. Evans v. Gordon, 245 Mo. 12, l. c. 27, 149 S. W. 638. Also, see State ex rel. Chapman v. Walbridge, 153 Mo. 194, 54 S. W. 447; State ex rel. Vail v. Clark, 52 Mo. 508.

■ The Section 127, Article V, of the Charter, relied upon by the appellant provides that any officer or employee of the City shall forfeit the position so held by becoming a candidate for any public office. This section could have no application as Murray was never a candidate for public office.

Moreover, this ordinance would not apply for the reasons we assigned on the Constitutional question just discussed, which would also apply to the common law rule prohibiting a person from holding two inconsistent offices.

■ Having disposed of all the points raised by the appellant adversely to its contentions, we will proceed to review the point raised by respondent on his cross-appeal.

Respondent contends the court erred in sustaining the appellant's defense of the five year Statute of Limitations. He says there are two reasons why the Statute of Limitations does not apply: first, that appellant is estopped to rely on the Statute of Limitations; and, second, that for the period of time the Statute would apply, the appellant waived its application because he plead a setoff to assignor's claims.

Respondent relies upon Section 1031, R. S. (Mo.) 1939, and on the equitable ground that the appellant is estopped to plead the Statute of Limitations because of the conduct of the appellant.

Section 1031, supra, reads:

"If any person . . . by any . . . improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

The trial court found "That no false representation or untrue statement as to the City's finances was made by the City Manager or any executive or administrative heads of any of the departments of the City to any of the assignors herein; that none of the assignors herein ever indicated to any City Official an intention of bringing a suit for the recovery of his or her respective claim herein asserted until after the decision in the case of *Rothrum v. Kansas City,* decided January 23, 1940, and none of the assignors herein was ever threatened with discharge in the event he or she should [**578**] institute suit against the City for his or her claim herein asserted; that the conduct of each of the assignors in delaying the institution of suit on his or her claim herein was neither by reason of any false representation or untrue statement as to the financial condition of the City made or done by defendant or any of its officers or employees nor by reason of any threat or fear of discharge in the event he or she did institute suit on said claim."

The respondent contends this findings of fact is not based upon substantial evidence and is contrary to other findings of fact made by the court. The burden is on the respondent to show facts and circumstances that would preclude appellant from relying upon the

Statute of Limitations.  In his brief, he admits the assignors never indicated any intention of filing an action for their claim for unlawful reduction until we decided the case of Rothrum v. Kansas City.  The reasonable inference from the record and this finding is that these assignors did not know they had a cause of action for their salary claims until after our decision in that case.  Ignorance of their rights was one of the reasons why the salary suits were not filed before the Rothrum decision.  The court, also, found that these assignors were not threatened with discharge in event they should institute a salary suit.  Respondent admits this is literally true, but says since they were led to believe that if they did not sign the applications for leaves of absence, they would be discharged, it necessarily meant if they filed an action to recover their salaries in full, they also would be discharged.  We do not think this conclusion necessarily follows, especially in view of the fact that the evidence shows eighty-six of these assignors left the service of appellant between 1932 and April of 1939, and fifty-seven left the service between April 30, and December 31, 1939.  Certainly the assignors who had left the service were free from any duress.  This is another circumstance to show the reason that suit was not filed at an earlier date is due to assignors' ignorance of their rights.  Respondent says the finding, that the delay in institution of the suit was not by reason of any false representation as to the financial condition of the City, is contrary to all the evidence.  If it is contrary to the findings of fact in reference to the applications of leaves of absence, we think this fact is immaterial.  The City liability is not dependent upon its ability to pay these salary claims.

We, therefore, hold that the essential facts necessary to show the appellant was not estopped to rely upon the Statute of Limitations are supported by the evidence.

The last point raised by respondent is that the court erred in refusing to declare as a matter of law that appellant had waived its right to rely upon the Statute of Limitations by reason of the allegation of setoff in its amended answer.

Appellant's amended answer did plead certain setoffs in event, and only in event, that it be held that the claims of the assignors arising prior to the five-year period before institution of suit were not barred by its plea of the five-year Statute of Limitations, and that the credits claimed by these setoffs were pleaded solely as a defense, and appellant expressly alleged that it did not seek any affirmative relief or judgment.

The setoff was pleaded only as a defense to the items that the appellant contended were barred by the Statute of Limitations.  In other words, the answer was that the salary claims for those years were barred by limitations, but, in the event they were not barred, the

amount alleged due is not correct because certain offsets by the way of recoupment have been ignored in respondent's petition.

Under these circumstances, the appellant did not waive his right to rely upon the Statute of Limitations. There is no inconsistency between the appellant's position in seeking to assert, merely for purposes of defeating a recovery, a barred setoff, and in pleading the Statute of Limitations against respondent's related claim, where the assertion of such barred setoff is to be given effect only if appellant's plea of limitation is ruled against it. Moran v. Babbitt Bros. Trading Co., 118 Pac. (2d) (Ariz.) 448, 137 A. L. R. 320; John Gulick & Sons v. Princeton & K. Branch Turnp. Co., 14 N. J. L. 545; People for Use of Hammond v. Graydon et al., 306 Ill. App. 163, 28 N. E. (2d) 318.

From what we have said, it follows that there is no merit in the contention of respondent that the defense of the Statute of Limitations was waived.

It follows, therefore, that the judgment of the trial court should be affirmed. It is so ordered. All concur.

### On Appellant's Motion for Rehearing or to Transfer to Court en Banc.

PER CURIAM:—In appellant's motion for rehearing or to transfer to Court en Banc, it is stated that our opinion overlooked the case of State ex rel. Tolerton v. Gordon, 236 Mo. 142, 139 S. W. (2d) 403. We did not overlook that case, nor do we consider it in conflict with our opinion.

In that case, the Legislature of this State made an appropriation for the Game and Fish Department with a proviso that none of the money therein appropriated should be paid out so long as the then Game and Fish Commissioner remained in office. Tolerton was the Game and Fish Commissioner when the appropriation act was passed. He brought a mandamus action to compel the State Auditor to audit and issue warrants for his salary and expenses. We held that the proviso in the appropriation act was illegal and issued our writ. The opinion did not discuss the question of the State's liability for his salary, but did say there was no doubt of the power of the Legislature to refuse to make an appropriation for the salary of any State officer, and in such cases the incumbent "has no legal ground of complaint." This, for the reason that our Constitution prohibits payment of any State funds except pursuant to an appropriation by the General Assembly. If the Legislature had not appropriated any salary for the Game and Fish Commissioner, Tolerton had no legal method to enforce the payment of his salary fixed by statute, (State ex rel. Mo. State Board of Agriculture v. Holladay, 64 Mo. 526) but that is far from saying that the State does not owe him the money for his salary, even if it has not provided a method to enforce its payment. This, for

the reason the State cannot be sued without its consent. State ex rel. State Highway Commission v. Bates, 317 Mo. 696, 296 S. W. 418.

The appellant has failed to distinguish the difference between a legal liability and a method or ability of collecting that liability.

On the other hand, the appellant can be sued to establish a legal liability against it. The case at bar was an action to establish its liability to respondent's assignors. In this case, we are only interested in the question of liability and not the method of enforcing that liability. We are convinced that the defense of exhaustion of the appropriation raised by the appellant is not sound.

Other points raised by appellant in its motions have been considered and found to be without merit.

The motion for rehearing and the motion to transfer to the Court en Banc are overruled. All concur.