ROBERT J. COLEMAN, Trustee, Plaintiff-Appellant, v. KANSAS CITY, MISSOURI, a Municipal Corporation, Defendant-Appellant.—No. 39027.

BURR S. STOTTLE, Trustee, Plaintiff-Appellant, v. KANSAS CITY, MISSOURI, a Municipal Corporation, Defendant-Appellant.—No. 39028.—182 S. W. (2d) 74.

Court en Banc, July 3, 1944.

Rehearing Denied, September 5, 1944.

*Wm. E. Kemp*, City Counselor, and *John J. Cosgrove*, Assistant City Counselor, for defendant-appellant.

*Reed & Ingraham* and *Burr S. Stottle* for appellee-appellant, Burr S. Stottle, Trustee.

*William G. Boatright* and *Harry L. Jacobs* for respondent and cross-appellant.

*Ayers Blocher amicus curiae.*

■ CLARK, J.—Coleman, as assignee and trustee of certain employees of Kansas City, and Stottle, as assignee and trustee of other employees of that city, filed separate suits in the circuit court and recovered judgments for the difference between the amounts actually paid such employees by the city for certain periods of time and the amounts which they claim should have been paid them by virtue of certain statutes. The plaintiff and defendant in each case has appealed.

The cases were tried together, have been submitted to us on one record and will be disposed of in one opinion. The amount involved in each case gives us jurisdiction. As each of the parties is both an appellant and a respondent, to avoid confusion we will refer to them in accordance with their respective positions as plaintiff or defendant.

The official census of the United States shows that since 1920 Kansas City has a population of more than 300,000. Sections 7725-7734, inclusive, Revised Statutes Missouri, 1939, [Mo. R. S. A., vol. 17, pp. 544-548] provide for the election of a License Collector in cities "now having or which hereafter may have" 300,000 or more inhabitants, prescribe the powers and duties of the office, the number and classification of deputies and the salary to be paid to each. These statutes were first enacted in 1901 and amended in 1909, 1921, and 1929. In 1901 St. Louis was the only city in the State having 300,000 or more inhabitants. At that time Kansas City was operating under a special charter adopted in 1898 which provided for an Inspector of Licenses and necessary assistants, the salaries being fixed by ordinances. At the first general election after the city attained a population of 300,000 in 1920, and every four years thereafter, a License Collector has been elected under the statutes. In 1926 Kansas City adopted a new charter and shortly thereafter the then License Collector received a document from the City Manager purporting to appoint or designate him as Commissioner of Licenses as provided in the charter. This designation or appointment was never renewed or revoked. Thereafter the License Collector performed the duties prescribed in the statutes, ■ but all appointments were made by him with the approval of the Director of Finance of the City and salaries were fixed by ordinances. These ordinances provided smaller salaries than those mentioned in the statutes. They were amended from time to time and in May, 1941, were made to comply with the statutes as to salaries and title of personnel, but not as to number of clerks and inspectors.

In 1940 five different opinions were furnished by the City Counselor's office to various city officials to the effect that the office of License Collector is governed by the statutes "and that any provision in the charter with respect to the office that is inconsistent with the statutes is without force and must give way to the statute."

All revenue collected by the License Collector is used by the city to pay expenses of its municipal government. No part of such revenue goes to the state, or to a county or school district. However, it goes into a general fund from which is paid municipal expenses and the maintenance of a police department and the city's contribution to the expense of general elections as provided by statutes.

The circuit court rendered judgment for the benefit of the License Collector and his assistants for the difference between the sums paid them and the amounts prescribed by the statutes, with six per cent simple interest from date of suit. Recovery was limited to the period of five years provided in statutes of limitation.

Many of the legal questions arising on this appeal were decided by this court in the two recent cases of Coleman v. Kansas City, 348 Mo. 916, 156 S. W. (2d) 644, and Coleman v. Kansas City, 351 Mo. 254, 173 S. W. (2d) 572. New contentions now urged by defendant city are: (1) that the statutes above mentioned are unconstitutional; (2) that the statutes, even if valid, do not apply to Kansas City; (3) that, even if the statutes are valid and applicable to Kansas City, the trial court erred in allowing compensation to employees not named in the statutes. The defendant city also asks us to reconsider our holding that the city employees are entitled to interest on their claims from date of suit.

Both the plaintiffs contend that the trial court erred in applying the five year statute of limitation, and plaintiff Stottle claims error in the allowance of an offset against the claim of one of his assignors, O'Fallon Jenkins.

On the constitutional questions the defendant city urges: that article 10, section 10 of the state constitution prohibits the State from imposing taxes upon a city for municipal purposes; that the city's charter, adopted pursuant to article 9, section 16 of the constitution, and the enabling act, [Sec. 7589, R. S. Mo. 1939, Mo. R. S. A., vol. 17, p. 444] provides a complete system of local self government including the power to levy and collect taxes, including license taxes; and that the statutes conflict with paragraphs 2 and 15 of section 53 of article 4 of the constitution.

The constitutional provisions mentioned are as follows:

Article 10, section 10. "The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the

corporate authorities thereof the power to assess and collect taxes for such purposes."

Article 9, section 16. "Any city having a population of more than one hundred thousand inhabitants may frame and adopt a charter for its own government, consistent with and subject to the Constitution and laws of the State . . . ."

Paragraphs 2 and 15 of Section 53 of article 4. "The General Assembly shall not pass any local or special laws: . . .

(2) Regulating the affairs of counties, cities, townships, wards or school district; . . .

(15) Creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election or school districts."

█ The constitutional provisions quoted from article 4 are prohibitions of the legislation mentioned by *local* or *special* law. The meaning is just as clear, as if expressly stated, that the general assembly, unless prohibited by some other constitutional provision, may enact such legislation by *general* laws. Throughout the state's existence the general assembly has enacted statutes regulating cities, creating city offices and prescribing the powers and duties thereof. For such purpose it has been customary to classify cities according to population. Such statutes have generally been held valid even if, when enacted, they apply to only one █ city, provided they are so worded as to apply to other cities which may thereafter attain the requisite population. [State ex rel. v. St. Louis, 318 Mo. 910, 1 S. W. (2d) 1021.] The defendant city concedes that such has been the general holding of this court, but urges that there must be a particular reason to justify the classification, citing, State ex rel. v. Miller, 100 Mo. 439, 13 S. W. 677. In that case a law providing for 21 school directors in cities of over 300,000 was upheld, although fewer directors are required in smaller cities. · By the same reasoning the statutes now under consideration can be upheld. The population of a city has some reasonable connection with the kind and number of offices it should have and the salaries it should pay. We hold that there is sufficient basis for the classification made by the statutes in the instant case.

█ On its claim that sections 7725-7734, supra, are unconstitutional, the defendant city places its main reliance upon section 10 of article 10 of the constitution which prohibits the general assembly from *imposing* taxes on the city for municipal purposes, but says that it *may* vest in the city the power to assess and collect taxes for such purposes. First, the city says the word "may" should be interpreted to mean "shall," and that the mandatory duty rests upon the general assembly to vest the power of taxation in the city. Of course, the city cannot exist without taxes and, in that sense, the mandatory duty is upon the general assembly to vest in the city the power to levy and collect taxes of some kind. However, in a case cited

by all the parties to this lawsuit, Kansas City v. Threshing Machine Co., 337 Mo. 913, 87 S. W. (2d) 195, this court expressly held that the general assembly has the power to determine the *kind* of taxes the city may impose. We think it is equally clear that the general assembly has the power to determine *the manner* in which taxes may be levied and collected by the city. But the city contends that the collection of taxes by the License Collector is a purely local or municipal affair in which the State has no concern, citing Murnane v. St. Louis, 123 Mo. 479, 27 S. W. 711. That case was mentioned in the Threshing Machine case, supra, and we pointed out that it had been overruled so far as it purported to hold the general assembly without power to classify cities according to population. A statute relating to a different form of taxes (special benefits for street improvement) was considered in the Murnane case, but what was said or implied there about the statute relating solely to local matters received a majority vote of the judges as to result only and is inconsistent with our holdings in the Threshing Machine case and in Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 416, and State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 2 S. W. (2d) 713. We discussed the matter fully in those cases and our ruling is to the effect that as to matters pertaining to private, local corporate functions the city holds its power independent of control by the general assembly, but as to governmental functions the State retains control. On this point the city's argument is wholly based on the fact that the license taxes are used exclusively for municipal purposes. That fact is not determinative. The distinction is not between local and general concern, but between corporate and governmental functions. The power of taxation is a governmental function which the constitution authorizes the general assembly to delegate to the city as to municipal taxes, but only in a manner "consistent with and subject to the constitution and laws of the state."

But the city contends that the statutes under consideration do not give the city power to impose the taxes. The argument of the city being that the collection of a tax is an inseparable part of the taxing process, that by naming the officers who shall collect the taxes and by prescribing their powers, duties and salaries, the State is *imposing* the taxes. We do not think this argument is tenable. The State has not *imposed* the taxes. It has authorized the city, at its option and within prescribed limitations, and by certain officers, to levy and collect license taxes upon some or all of certain specified occupations. Nor is the office of License Collector a "state office" because it is established by a state law. County and city offices generally are so established. The distinction between state and municipal officers rests upon the extent of their powers and the nature of their duties.

■ The city's contention, that the statutes, even if valid, do not apply to Kansas City because its charter provides a complete system of taxation, is completely ■ answered by the provision in article 9, section 16, of the constitution that the charter must be "consistent with and subject to the constitution and laws of the state." When Kansas City attained a population of more than 300,000 it came under the provisions of the statutes, sections 7725-7734, supra. When it adopted its present charter in 1926 we hold that it necessarily adopted the method of collecting license taxes provided by the statutes.

■ Defendant city's contention that the trial court erred in allowing compensation to employees not named in the statutes requires little discussion. It is not claimed that the total number of employees was in excess of the number permitted by the statute. The statute, section 7733, supra, permits the appointment of not to exceed twelve clerks and sixteen inspectors. The city says there were more than twelve clerks and only five or six inspectors. These employees acted some of the time as clerks and at other times as inspectors. The trial court held that all appointees to positions as clerks in excess of twelve were inspectors and allowed them pay as such. The salaries of inspectors are less than that of clerks. So the city is not hurt by the court's ruling.

■ In both the Coleman cases [156 S. W. (2d) 644, and 173 S. W. (2d) 572] we held that employees of Kansas City were entitled to interest on the portions of salary wrongfully withheld from them, from the date of demand. The only demand in the Coleman cases and in the instant case was the filing of suit. Defendant city asks us to reverse our ruling on this question, arguing that an "account" as used in our interest statute [section 3226, R. S. Mo. 1939, Mo. R. S. A., vol. 10, p. 373] means a claim based on contract only. We are not impressed with such argument. As stated in the second Coleman case, "account" in a general sense is equivalent to "claim" or "demand." We think the statute permits interest on liquidated claims arising by operation of law as well as upon contract.

"It may be stated as a general rule that a claim by a public officer for overdue salary or compensation bears interest from the time the salary or compensation ought to have been paid, although in some jurisdictions the right to such interest has been denied where no statute permitted its payment." 43 Am. Jur., p. 154, sec. 367.

■ Both plaintiffs claim that the trial court erred in applying the five year statute of limitations, and in holding that the claims were not open accounts within the meaning of Section 1019, Revised Statutes Missouri, 1939, [Mo. R. S. A., vol. 4, p. 213] which says: "In an action brought to recover a balance due on a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item in the account on the adverse side."

The trial court's ruling was clearly right. There is no evidence that the parties regarded the claims as open accounts or intended to have a future adjustment. The salaries were payable monthly and a right of action accrued to the employee at the end of each month.

"It may be stated as a sound general proposition that a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time." 34 Am. Jur., page 92, sec. 113.

The facts considered in McClellan v. St. Louis (Mo. App.), 170 S. W. (2d) 131, differ from those in the instant case. There an ordinance fixed the salary of a city officer at $200.00 per month and also provided for his residence, lighting, heating and laundry. There was no controversy as to the monthly salary which was paid in full. The suit was to recover the amount expended by the officer for lighting, heating and laundry. Those items varied in amount from month to month, required adjustment between the officer and the city and, as the court of appeals correctly held, did not become due until demand. Also the court properly held that the claim drew interest from demand.

Plaintiff Stottle claims that the court erred in allowing an offset against the claim of assignor, O'Fallon Jenkins. Briefly, the evidence is that the city record shows a payment of $365.00 to Jenkins which he denies receiving. Plaintiff Stottle says the city failed to satisfy its burden of proving payment, citing our opinion in Warren v. Curry, 352 Mo. 363, 177 S. W. (2d) 472. That was an equity case in which we made our own finding of facts. This is a law case; there was some evidence of payment, the court was not compelled to believe Jenkins' denial and we are bound by the court's finding of fact. We have considered all the cases cited by defendant city and have discussed the Missouri cases which we regard as relevant. Cases cited from other states were ruled under constitutional or statutory provisions differing from ours.

These cases were tried well in the circuit court and ably briefed and argued here. We find no error and the judgments are affirmed in both cases. All concur.