**CITY OF ST. LOUIS, Missouri, a Municipal Corporation, et al., Respondents,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS et al., Appellants.**

**No. 58527.**

Supreme Court of Missouri, Division No. 1.

Dec. 16, 1974.

Jack L. Koehr, City Counselor, Charles W. Kunderer, Asst. City Counselor, St. Louis, for respondents.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for defendants.

ROBERT R. WELBORN, Special Judge.

Action for declaratory judgment. The City of St. Louis and various of its officials sought a judgment holding Chapter 296, RSMo 1969, V.A.M.S., dealing with discrimination in employment, unconstitutional as applied to the City of St. Louis. The trial court entered judgment as prayed for by City. The defendants, Missouri Commission on Human Rights and its members and officials, appealed.

On November 20, 1968, Ina Boon, on behalf of the "St. Louis Branch, NAACP for Negro Firemen of the St. Louis Fire Dept.," filed a complaint against the St. Louis Fire Department with the Missouri Commission on Human Rights, the agency charged with enforcement of the discriminatory employment practices law (§ 296.-030, RSMo 1969, V.A.M.S.), charging discriminatory treatment by reason of race or color: "Racial imbalance and discrimination in upgrading procedures and hiring practices."

On September 9, 1971, an amended complaint from the same source was filed against the St. Louis Fire Department and its chief, the St. Louis Civil Service Commission, the Director of Personnel and the Director of the Department of Public Safety of St. Louis. The amended complaint charged discriminatory treatment by reason of race or color: "Continuing racial imbalance and discrimination in upgrading procedures and in hiring practices and racially discriminatory practices in firehouse living conditions."

On September 30, 1971, the Commission on Human Rights issued a subpoena to R. Elliott Scearce, Director of Personnel for the City of St. Louis. The subpoena was the result of the NAACP complaint and directed the production before a representative of the commission of examinations used or to be used for fire fighter, fire captain and battalion fire chief, St. Louis Fire Department.

Following service of the subpoena, the respondents named in the complaint filed a motion before the commission to dismiss the complaint and quash the subpoena, charging that Chapter 296 as applied to the City of St. Louis is unconstitutional.

The commission took no action on the motion and on January 11, 1972, the director of conciliation for the commission wrote the city counselor, informing him that the chairman of the commission had investigated the complaint and found probable cause to credit the allegations of the complaint. The letter requested a meeting with city officials to discuss terms of conciliation. The city rejected the offer of conciliation on the grounds that the commission lacked jurisdiction over the respondents and the subject matter of the complaint.

On March 3, 1972, the commission issued a notice of public hearing to be held on the complaint on March 22, 1972.

On March 10, 1972, the city and its officers filed their petition for declaratory judgment in the Cole County Circuit Court. The cause was submitted on the pleadings and the trial court entered judgment as follows:

"IT IS ORDERED, ADJUDGED AND DECREED that application of Chapter 296, RSMo 1969, to related racial grievances of employees in the classified Civil Service of the constitutional charter City of St. Louis is unconstitutional and void by reason of Article VI, Section 22 of the Missouri Constitution, 1945, as an affirmative action of the General Assembly to determine hiring, promotions, wages and working conditions of such employees and interferes with the duties of City officers charged with duties and responsibilities related to such personnel matters."

This appeal followed.

For purposes of the statutes on discriminatory employment practices, § 296.010(2), RSMo Supp.1973, V.A.M.S., defines an "employer" as including "the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state, * * *."

§ 296.020 provides, in part:

"It shall be an unlawful employment practice:

"(1) For an employer, because of the race, creed, color, religion, national origin, sex or ancestry of any individual:

"(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, creed, color, religion, national origin, sex, or ancestry; or

"(b) To limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, creed,

color, religion, national origin, sex, or ancestry; * * *."

By § 296.030, the Missouri Commission on Human Rights is "(1) To seek to eliminate and prevent discrimination in employment because of race, * * *; (2) To effectuate the purposes of this chapter first by conference, conciliation and persuasion so that persons may be guaranteed their civil rights and good will be fostered; (3) To formulate policies to effectuate the purposes of this chapter and to make recommendations to agencies and officers of the state or local subdivisions of government in aid of such policies and purposes; * * *."

Under § 296.040, the commission, acting through one of its members, investigates complaints and if the investigator concludes "that probable cause exists for crediting the allegations of the complaint, he shall immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion, * * *."

In case such efforts fail, the complaint may be set for hearing before members of the commission. Subparagraph 6 of § 296.040 provides, in part:

"If, upon all the evidence at the hearing the commission shall find that a respondent has engaged in any unlawful employment practice as defined in this chapter, the commission shall state its findings of fact and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful employment practice and to take affirmative action to require reinstatement or upgrading of employees with or without back pay, to require hiring or restoration to membership in any respondent labor organization, as in the judgment of the commission will effectuate the purposes of this chapter, and including a requirement for report of the manner of compliance. * * *"

These statutes establish a state-wide program for avoiding racial discrimination in

employment in both the public and private sector. The trial court found that the provisions of Chapter 296 could not be made applicable to the City of St. Louis as a special charter city because of § 22 of Article VI, Constitution of Missouri, V.A.M.S., which provides:

"No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution, and all such offices or employments heretofore created shall cease at the end of the terms of any present incumbents."

According to the transcript of the proceedings of the 1945 Constitutional Convention, § 22 of Article VI was added as a new provision of the constitution, largely the result of a series of cases in this court involving the municipal license collector in the City of Kansas City. Those cases held that state statutes, rather than the city charter provisions, governed the manner of selection and compensation of that official and his employees. Coleman v. Kansas City, 348 Mo. 916, 156 S.W.2d 644 (1941); Coleman v. Kansas City, 351 Mo. 254, 173 S.W.2d 572 (1943); Coleman v. Kansas City, 353 Mo. 150, 182 S.W.2d 74 (banc 1944). See Preisler v. Hayden, 309 S.W. 2d 645, 646 [1] (Mo.1958).

§ 22 of Article VI was applied in State ex rel. Burke v. Cervantes, 423 S.W.2d 791 (Mo.1968). In that case, the court held that the mayor of the City of St. Louis could not be compelled to appoint a firemen's arbitration board under § 290.360, RSMo 1969, V.A.M.S. The court held that § 22 of Article VI precluded the applicability of the statute to St. Louis in view of its status as a special charter city.

Article XVIII of the charter of the City of St. Louis establishes the Civil Service Commission and creates the office of Director of Personnel. The charter provides for the establishment and administration of a system of employment of municipal employees "on the sole basis of merit and fitness." Art. XVIII, § 2(a).

Section 16 of Article XVIII provides:

"No recommendation or question under the authority of this article shall relate to the race, political or religious opinions, affiliations or service of any person. No person shall be appointed to a position in the classified service hereunder, nor be demoted, re-employed, promoted, removed, increased or reduced in compensation, nor in any other way be favored or discriminated against in any matter within the purview of this article, because of his race, political or religious opinions, affiliations or service."

Among the rules which the charter directs the commission to adopt are (Art. XVIII, § 3):

"(d) For certification of eligibles and for appointment and promotion to competitive positions on the basis of such tests, subject to a working test period of probation not to exceed one year. One of the highest three (3) eligibles certified or remaining on the list of eligibles certified to be appointed to each vacancy.

"(e) For filling vacancies in other higher competitive positions, so far as practicable, by means of promotion on competitive examination except where vacancies are filled, in the interests of the service, by demotion, transfer, reinstatement or re-employment, in the order of preference here indicated, where applicable. Promotion on competitive examination shall be deemed to be practicable whenever there are qualified employes in positions of lower classes who are willing to compete."

These charter provisions create the offices of the Civil Service Commission and Director of Personnel. These and other provisions and ordinances enacted thereunder fix the powers and duties of those offices. No provision of Chapter 296 directly specifies any powers or duties of these city officials. § 296.020 does require that,

as a matter of state-wide policy, their powers and duties be exercised in a nondiscriminatory manner. The fact that the charter of the city imposes such a limitation does not preclude application of the state-established policy.

■ The manner of enforcement of the state law is what really gives rise to the problem in this case. Respondents assert and the trial court agreed that the law would permit the Commission on Human Rights "to substitute its judgment for the Charter mandated decisions of the Civil Service Commission in such matters as determination of rates of pay, working conditions, competitive testing for hiring and promotion of black firemen * . * *." The initial stage in the enforcement procedure, i. e., "conference, conciliation and persuasion" (§ 296.040, subd. 2.) to eliminate the unlawful employment practice, does not entail an overriding by the state agency of the municipal hiring authority. The trial court ignored this phase of the enforcement process and respondents here offer no showing of how such procedure would preclude the exercise of their own judgment by the municipal officials.

The next step in the enforcement process is the public hearing procedure. This step would ordinarily involve a disputed claim of discrimination to be resolved by the state authority by way of a cease and desist order. The Human Rights Commission is also authorized to order affirmative action by the employer, including "reinstatement or upgrading of employees with or without back pay * * *."

■ The state has the right in the exercise of the police power to prescribe a policy of general state-wide application which applies to special charter cities. Petition of City of St. Louis, 364 Mo. 700, 266 S. W.2d 753, 755[4, 5] (1954). There must be some method of enforcement if the policy is to be effectuated. Here the basic enforcement is by way of order of an administrative body. Insofar as the activities of

the municipal authorities enter into the area in which the general state policy controls, their actions are subject to review by the state administrative agency to determine whether or not the local authorities are correctly applying the general state policy. The trial court considered that a decision by the state agency adverse to the municipal officials would constitute "interference with the duties of officers of the City charged with regulation of personnel practices * * *" and that such "interference" would be violative of Article VI, § 22, Constitution of Missouri.

■ "Interference" in the performance of the duties of the city officers, for the purpose of securing compliance with state policy, is not "fixing the powers [or] duties" of a municipal office, which is what the constitution prohibits. If an act of the legislature is to be declared unconstitutional, it must be demonstrated that the legislation is unquestionably violative of a constitutional prohibition or guaranty. Chapter 296, as applied to the City of St. Louis, has not been shown to violate the prohibition of Article VI, § 22, and the trial court was in error in so holding.

■ Respondents argue that Chapter 296, by virtue of the public hearing procedure, requires the city officials to arbitrate the grievances of firemen in the classified service before the Human Rights Commission. The public hearing process and its product is not an arbitration procedure. The process is simply one of determining the facts in order that the Human Rights Commission may determine whether or not prohibited discriminatory practices exist.

■■ The trial court in its memorandum further found that the provisions of § 296.040, subd. 6., authorizing the Human Rights Commission to reinstate or upgrade employees "with or without back pay," violate § 39(3) of Article III, Constitution of Missouri, which prohibits the General Assembly from granting or authorizing a municipal authority to grant extra compensa-

tion to a public employee after service has been rendered. This determination is beyond the scope of the petition in the case. Constitutional questions must be properly raised by the parties. The question was not raised and was not properly before the trial court and is not properly for review here.

■ As a further consideration, a constitutional question in any event should be decided only if essential to ruling the case presented. This case arose by reason of the threshold question of jurisdiction of the Human Rights Commission over the complaint. Whether or not the complaint involves an issue which necessarily would give rise to a claim of back pay is not clear. In any event, such an order would issue only if violation were found. No such finding has yet been made. There is no necessity to reach this constitutional question at this time.

On this appeal, the respondents urge some further considerations in support of the trial court's judgment. They argue that § 296.010(2) does not specifically include special charter cities in the definition of "political or civil subdivision," and, therefore, the construction should be given to the language which would exclude such cities in order to avoid unconstitutional applications of the act to such cities. This contention is answered by the conclusion previously reached that the action is not unconstitutional as applied to such cities.

■ Respondents also contend that Chapter 296 is unconstitutional because it vests enforcement powers in courts of equity to control acts of public officers acting within their proper jurisdiction. No such complaint is made by the petition. The petition does charge unlawful delega-

tion of judicial power to the Human Rights Commission, but that is not the contention now advanced. The contention here made may not be advanced for the first time in this court.

■ Respondents also contend that the application of Chapter 296 is "void" by reason of the failure of the complainant before the Human Rights Commission to exhaust adequate administrative remedies before the St. Louis Civil Service Commission. The petition alleged that the complainant before the state agency had filed a similar complaint with the St. Louis Civil Service Commission which had assumed jurisdiction of the complaint, but the complainant did not carry the matter to a final decision before the city body. Respondents contend that the doctrine of exhaustion of administrative remedies is therefore involved. The trial court in its memorandum agreed with this contention.

The doctrine of exhaustion of administrative remedies is applied by the courts in cases involving judicial action on questions which have by law been entrusted originally to the determination of administrative bodies. 2 Am.Jur.2d, Adm.Law, § 595, p. 426 (1962). The rule would not apply to defeat the jurisdiction of the Missouri Human Rights Commission over matters within the scope of its statutory authority.

Judgment reversed and cause remanded with directions to enter a new judgment consistent with the views herein expressed.

BARDGETT, P. J., concurs.

HOLMAN, J., dissents.

SEILER, J., not sitting.