Herschel HARRIS, Employee-Respondent,

v.

PINE CLEANERS, Inc., Employer, American Casualty Company, Insurer, Appellants,

Bituminous Casualty Corporation, Insurer, Respondent.

No. 28907.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1954.

Motion for Rehearing or to Transfer to Supreme Court Denied Jan. 31, 1955.

Harlan & Harlan, John L. Harlan, Sr., Clayton, Joseph Nessenfeld, St. Louis, of counsel, for appellant.

Albert I. Graff, Malcolm I. Frank, St. Louis, for respondent Bituminous Casualty Corp.

Albright, Hodges, & Nolan, St. Louis, for employee.

ADAMS, Special Judge.

This is an appeal from the judgment of the Circuit Court affirming an award of the Industrial Commission in favor of employee, respondent Herschel Harris, against employer, appellant Pine Cleaners, Inc., and one insurance carrier, appellant American Casualty Company and discharging a second insurance carrier, respondent Bituminous Casualty Corporation.

For a number of years John and Angeline Lekometros conducted a partnership under the name of Pine Hat Cleaning Works. Prior to September, 1950, they operated several cleaning establishments, one of which was located at 202 North 18th Street in the City of St. Louis, Missouri.

One A. L. McCormack handled John and Angeline's insurance business. As old policies expired, he would, without specific authorization from John, order renewals. On being billed for the premiums John would pay them. McCormack was general agent for Bituminous Casualty Corporation. He had authority to bind the company on risks.

In May of 1950, he ordered a Bituminous policy covering three of the cleaning establishments operated by John and Angeline Lekometros, including the North 18th Street location. This policy was effective from May 10, 1950 to May 10, 1951.

In September, 1950, Steve Lekometros, nephew of John and son of Angeline, incorporated the North 18th Street establishment under the name of Pine Cleaners, Inc., with Steve as President, John as Vice-President and Angeline a stockholder. At the time of the incorporation, Steve had one Ed McCauley to write the workmen's compensation policy for the corporation. McCauley procured a policy from appellant American Casualty Company, covering the period from September, 1950 to September, 1951.

On or about May 10, 1951, when the May 1950 Bituminous policy expired, McCormack ordered a renewal policy from Bituminous for the period May 10, 1951 to May 10, 1952. This policy was written in the name of John and Angeline Lekometros, d/b/a Pine Hat Cleaning Works, and covered the same three establishments as the original policy. Neither John nor Steve ordered this policy but McCormack wrote it as a renewal in accordance with his practice. Sometime after May 10, McCormack delivered this renewal policy to John Lekometros and was told by John that he would have to "cut out" the 18th Street location because it had been incorporated under the name of Pine Cleaners, Inc. John told McCormack to take the partnership policy back and to renew it, omitting the 18th Street location. He also told McCormack that he would have to see Steve Lekometros about the insurance for the 18th Street place.

On May 18, 1951 McCormack ordered two new compensation policies from Bituminous, one covering the remaining establishments of the partnership and the other to be in the name of Pine Cleaners, Inc. covering the 18th Street location. Both of these policies bore date of May 28, 1951 but purported to be effective May 10, 1951, for a period of one year.

McCormack delivered the partnership policy to John. A day or so later he attempted to deliver the policy covering the 18th Street location to Steve but was told that he, Steve, already had compensation insurance for the corporation and Steve refused to accept the policy. The policy was returned to Bituminous and was cancelled, effective May 10, 1951.

On May 24, 1951, respondent Herschel Harris sustained an injury as a result of an accident arising out of and in the course of his employment by Pine Cleaners. It is agreed that he is entitled to compensation.

Steve Lekometros was notified of the injury early on the morning of the 25th and he called to see employee in the hospital on the following Sunday, May 27. Steve notified McCauley of the accident and thereafter American issued checks in payment of compensation.

A few days before June 8, 1951, "someone from Pine Cleaners" notified Albert I. Graff, Claims Attorney for Bituminous, of employee's accident. Without knowledge that its policy had never been delivered, Bituminous sent employee three checks, aggregating $150 and covering six weeks compensation.

Upon receiving these checks from two different companies, employee told his attorney. The attorney checked with Steve about duplicate policies and thereafter American and Bituminous became aware that each was sending compensation checks to employee. Both ceased sending payments, Bituminous because it claimed no policy was in existence, and American because it claimed it was liable for only one-half of the compensation.

Employee filed claim in which Pine Cleaners, Inc., was named employer and both Bituminous and American designated as insurers. In due course a hearing was had, the employee being represented by his attorney, the employer and American by their attorney, and Bituminous by its attorney.

The evidence showed that employee was rendered unconscious by the accident and was taken to the St. Louis County Hospital. He was treated by doctors apparently of his own choice. While at the outset of the hearing before the Referee it was formally stated that the medical expenses were a "matter of proof" it does not appear from the rest of the proceedings that any question was raised about medical expenses until on this appeal.

In addition to allowances for compensation and disfigurement, the Referee awarded employee $504.40 as "value necessary medical aid not furnished by employer or insurer." The Referee also found that Bituminous was not an insurer and that American was.

On review by the Industrial Commission, its final award affirmed the Referee's award in all matters, dismissed the claim as to Bituminous and found that the American

should reimburse Bituminous for the $150 it paid "by mutual mistake."

On appeal to the Circuit Court the final award was affirmed.

Employer and American Casualty have appealed from the judgment of the Circuit Court, contending that the judgment should be reversed, with directions to set aside the award, for the reasons:

1. The Commission erred in dismissing the claim against Bituminous because:

(a) It was without jurisdiction to find that Bituminous was not an insurer; and,

(b) Such finding is contrary to the evidence.

2. The Commission erred in ordering American to reimburse Bituminous for the $150 paid because:

(a) The evidence does not show that the payment was made through mutual mistake; and,

(b) In making the order, the Commission usurped judicial powers not conferred on it by the Legislature; and,

(c) By the usurpation of such judicial power, American was denied due process of law, being deprived of the right to be heard by a tribunal legally authorized to decide the issues involved.

3. The award of medical expenses in the amount of $504.40 was erroneous.

As noted, appellants' Point 2(c) complains that because of the Commission's alleged usurpation of judicial power, American has been denied due process of law. Claiming that an issue involving the construction of the Constitution of the United States is raised, Bituminous has filed a motion to transfer this cause to the Supreme Court.

■■ In order to invoke the jurisdiction of the Supreme Court on the ground that a constitutional question is involved, a party must raise it at the first available opportunity. State ex rel. Thompson v. Roberts, Mo.Sup., 264 S.W.2d 314, 316–317 (1). Appellants did not raise the question in the Circuit Court. They attempt to raise it for the first time in their brief filed in this court. It was not, therefore, raised at the "first available opportunity". Hohlstein v. St. Louis Roofing Co., 328 Mo. 899, 42 S.W.2d 573, 578(12–14); Lentz v. Asphalt Paving Co., Mo.App., 50 S.W.2d 1063, 1064(2, 3); Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S.W.2d 713, 715(7). The motion is denied.

On the merits, appellants first contend that the Commission was without jurisdiction to adjudicate the question of whether Bituminous' policy was issued "by mistake or without authority of the assured"; that the Commission is an administrative agency and "can exercise only such powers as the Legislature has conferred upon it within the framework of the Constitution"; and that the Commission is not vested with "such judicial power", the same being exclusively in the courts.

■ In adopting verbatim the opinion of this Court, the Supreme Court in Liechty v. Kansas City Bridge Co., Mo.Sup., 162 S.W.2d 275, 280, said that it was not only the Commission's right but its duty "to rule upon every issue presented which pertains to a determination of liability under the Act." "Liability" is not fixed until it is determined who is entitled to what from whom. What are the "issues" then which the Commission must "rule upon" in a "determination of liability under the Act"?

■ The Act contemplates that an "employee" (or his "dependents" if death ensues) suffering an "injury" as the result of an "accident" "arising out of and in the course of his employment" shall be paid compensation by the employer's "insurance carrier" unless the "employer" has qualified as a "self insurer."

The "issues" therefore are:

(1) Was the injured party an employee; or if death ensued, is the claimant a dependent of such employee?

(2) Did the employee suffer an injury?

(3) Did the injury result from an accident?

(4) Did the accident arise out of and in the course of such employee's employment?

(5) Who is the insurance carrier (if employer is not a self insurer)?

■ Because the Compensation Act is exclusive, Section 287.120 RSMo 1949, V.A.M.S., and a "complete code", Smith v. Kiel, Mo.App., 115 S.W.2d 38, 39(1–3), the Commission is possessed of "those powers which are incidental and necessary to the proper discharge of its duties in administering the Compensation Act". Liechty v. Kansas City Bridge Co., supra. "The proper discharge of its duties" demands that the Commission shall make findings on each and all of the five enumerated "issues" presented in every compensation claim. The denial of the power to make a finding on any one "issue" destroys the effectiveness of the Act. If the parties must go outside the Act for the determination of any of these "issues", the Act is not then a "complete code" or "exclusive."

Perhaps most illustrative of the many directives of the Act compelling the conclusion that the Commission has authority to make findings establishing liability on a particular insurer is the provision in Section 287.300 that the award "shall not be enforceable against the employer, except on motion and proof of default by the insurer." If the Commission lacks authority to find an insurer liable (or which of several alleged insurers), the employee is helpless. He can not seek recovery from the employer until he can prove default by the insurer. The insurer is not in default until its liability has been determined. "Liability under the Act" is not fixed until

there is a finding against someone. A proceeding which falls short of establishing' this final step is meaningless and "proof of default" could never be established.

To give effect to the provisions of the Act, it necessarily follows that the Legislature intended that the Commission should have power in the first instance to determine that a policy of insurance was in effect at the date of the accident and that the insurer is liable. The correlative, of course, exists and the Commission has power to find that a policy of insurance was not in effect at the date of the accident and the insurer is not liable.

■ Does the fact that such powers possess characteristics of what is commonly called judicial powers infringe on constitutional limitations? We hold that it does not. Baxter v. Land Const. Co., 357 Mo. 58, 206 S.W.2d 325, 329(4, 5).

■ The Supreme Court, in the Liechty case, held that the Commission has "incidental quasi judicial powers"; frequently determines questions of "purely legal nature"; is under the duty "to apply the law announced by our appellate courts to the facts found"; and that the exercise of such powers was not contrary to constitutional inhibitions. True "judicial power" vested in the courts by our constitution is the power to " 'decide and pronounce a judgment and carry it into effect * * *.' " United States v. Carrollo, D.C. W.D.Mo., 30 F.Supp. 3, 5(2). The Commission can not carry its awards into effect nor enforce its orders by execution. Those powers are, by the Act itself, reserved to the Courts.

Section 22, Article V, of the V.A.M.S. Constitution of Missouri (new in 1945 Constitution) as well as our Administrative Procedure and Review Act (Chapter 536 RSMo 1949, V.A.M.S.) recognizes that some decisions of administrative bodies are "judicial or quasi-judicial" and provide for a review by the courts. The "judicial power of the state" as meant by the Constitution is, therefore, not usurped by the Commission, but is reserved to the courts.

■ We hold that the Commission, in determining liability under the Act, possesses the power and the authority to apply principles of law as announced by our appellate courts to the facts found; that a determination of who is liable for compensation to an employee is one of the duties of the commission; and that the commission has the authority and it is its' duty to discharge anyone whom it finds to be not liable under the Act.

■ The Commission's action in dismissing the claim against Bituminous is supported by uncontradicted evidence. The policy written by Bituminous purporting to cover Pine Cleaners, Inc., was never effective. None of the elements of a contract—offer and acceptance, meeting of minds, consideration or ratification, was present. There was no issue of "cancellation" for there was never any contract to cancel. Payments made by Bituminous under the mistaken belief that the policy had been accepted do not create a contract where none existed.

The Commission did not err in dismissing the claim as to Bituminous.

■ The Commission, however, did not have power to order American to reimburse Bituminous for the payments mistakenly made to employee. This finding was not on an issue which pertained to "a determination of liability under the Act", nor was a finding on it "necessary to the proper discharge of its [the Commission's] duties in administering the Compensation Act," Liechty v. Kansas City Bridge Co., Mo.Sup., 162 S.W.2d 275, 280; nor an issue contemplated by the Act. It was simply a dispute and an issue solely between the two insurance carriers and over which the Commission had no jurisdiction.

■ As to the allowance of medical expenses, appellants say that there was no evidence to show "how much medical treatment was reasonably required" and no evidence that any of the charges "included in the award were reasonable."

From a reading of the entire record it is quite apparent that there was no real dispute about medical expenses at the hearing. No objection was made at the hearing during the entire testimony relative to medical expenses. With the exception of the general allegation that "the award is against the law, facts and the weight of the evidence," no complaint about this allowance was made in the application for review before the full Commission. The complaint now is not that no medical expenses should be allowed, but that there is no evidence to justify a finding of how much medical treatment was reasonably required and no evidence that the charges as shown in evidence were reasonable.

The employer, through its president, Steve Lekometros, knew of claimant's hospitalization and need for medical aid within 72 hours of his injury. In its report of injury to the Commission on a form which states: "Do not report any occurrence unless it causes personal injury serious enough to require medical aid", the employer answered "Yes" to the question: "Is further medical aid required?"

The following testimony of the claimant was unobjected to:

"Q. Now, did you incur any expenses as a result of this accident, Mr. Harris? A. Yes, sir.

"Q. Do you have any idea what your medical expenses were? A. I know approximately what they are.

"Q. Will you kindly read those figures and the doctors and hospital to the Judge."

Claimant thereafter read the amounts of various hospital, doctor and other medical expenses. Following this testimony, statements of claimant's medical expenses were marked as claimant's exhibits and were admitted in evidence without objection.

There was substantial evidence and testimony supporting the Commission's finding and award for medical expenses. McComosh v. Shapleigh Hardware Co., Mo.

App., 40 S.W.2d 728; Huelsmann v. Stute & Co., Mo.App., 28 S.W.2d 387, 388(3).

The judgment of the circuit court is reversed and the cause is remanded with directions to the trial court to reverse the award and remand the cause to the Industrial Commission with directions to said Commission to enter a new award in favor of the claimant, the same in all respects as the one heretofore entered, except that portion thereof reading as follows:

"that American Casualty Company shall reimburse Bituminous Casualty Corporation for said amount of $150.00 paid by mutual mistake."

ANDERSON, P. J., and BENNICK, J., concur.