**Theodore D. McNEAL, George T. Mehan, Edward Walsh, Salees Seddon, Mayor John Poelker, comprising the Board of Police Commissioners of St. Louis, Missouri, Defendants-Appellants,**

v.

**Richard BEQUETTE, Plaintiff-Respondent.**

**No. 39746.**

Missouri Court of Appeals, St. Louis District, Division One.

July 25, 1978.

Motion for Rehearing and/or Transfer Denied Sept. 15, 1978.

Application to Transfer Denied Nov. 6, 1978.

Whalen, O'Connor, Danis & Tobben, David O. Danis, Daniel G. Tobben, St. Louis, for defendants-appellants.

2. We deny defendant's motion to dismiss the appeal for the alleged failure of appellant to comply with the Rules.

London, Greenberg & Fleming, C. John Pleban, St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

The St. Louis Metropolitan Board of Police Commissioners (hereinafter the Board), appeals from a judgment entered by the circuit court of St. Louis County reversing an administrative decision by the Board suspending respondent Richard Bequette, a police officer, for four days without pay. For reversal of this judgment the Board argues that the trial court erred in reversing the Board's finding that respondent was insubordinate and disrespectful to a superior officer because its finding was supported by competent and substantial evidence on the whole record. For the reasons discussed below, we reverse and remand with directions to the trial court to reinstate and sustain the decision of the Board.

The facts in this case are long and convoluted. Suffice it to say there was considerable confusion surrounding an order given to respondent by his supervisor, Sergeant Buchanan; that is, whether respondent was still obliged to follow the order after he went off duty; whether respondent was relieved of his duty by another sergeant; and whether respondent related the entire facts surrounding the order to the second sergeant.[1] The entire controversy culminated in a telephone conversation between Sergeant Buchanan and respondent in which respondent was allegedly insubordinate and disrespectful to Buchanan.[2] After a hearing, the Board found that respondent was insubordinate and suspended him for four days without pay. The trial court reversed the Board's finding on the ground that it was not supported by competent and substantial evidence.

■■■ What was actually said in this conversation is known to only two parties: Bequette and Buchanan. Respondent admitted most of the language Sergeant Buchanan attributed to him but provided a less offensive context of his remarks than that testified to by the sergeant. Sergeant Buchanan was unable to recall if he said the language attributed to him by respondent. In any event, who offered the more reliable version of the conversation is a matter of credibility, and while we may have decided the case differently as an original proposition, we, as well as the trial court, must defer to the administrative tribunal's findings of fact. Neither a circuit court nor an appellate court may substitute its judgment for that of the administrative board. *State v. Simmons*, 299 S.W.2d 540, 542 (Mo.App. 1957). Rather, our standard of review is limited; we may not set aside the board's decision unless it is not supported by competent and substantial evidence on the whole record. § 536.140(2)(3) RSMo 1969; *e.g., Board of Education, Mt. Vernon Schools v. Shank*, 542 S.W.2d 779, 782 (Mo. banc 1976); *State ex rel. Hoffman v. Public Service Comm'n*, 550 S.W.2d 875, 878 (Mo.App. 1977). In addition, the determination of the credibility of witnesses is a matter for the board. *E.g., Bd. of Education, Mt. Vernon Schools v. Shank, supra*, at 782; *Lindsay v. Ford Motor Co.*, 548 S.W.2d 618, 619 (Mo. App.1977).

■■■ Because the issue in the present case is a matter of credibility, we must defer to the board's finding that Sergeant

1. This controversy began with Sergeant Buchanan's order to Officer Bequette to view the body of a heart attack victim at the morgue for signs of violence. The body had not arrive at the morgue when respondent's tour of duty ended and he went home without viewing it. At this point the story becomes very confused. The morgue apparently notified the wrong station when the body arrived: Sergeant Buchanan possibly failed to tell respondent that the body was available, and; it is questionable whether respondent made adequate arrangements before leaving the station for someone else to complete the assignment. At 12:45 A.M., when respondent learned that the body was at the morgue, he apparently obtained permission from the morgue and the sergeant then on duty for someone else to view the body.

2. When Sergeant Buchanan learned that Sergeant Spencer was completing the morgue assignment, he called respondent to tell him that respondent, and not anyone else, was to view the body. Exactly what was said and the tone with which it was said is unclear.

Buchanan's version of the telephone conversation was more credible than that offered by respondent.[3] The decision of the board was not unsupported by competent and substantial evidence on the whole record. Therefore, we must reverse and remand with directions to the trial court to reinstate and sustain the decision of the board.

Judgment reversed and remanded with directions.

CLEMENS, P. J., and SMITH, J., concur.

---

**3.** We find it somewhat significant that the only witness independent to the Buchanan-Bequette controversy gave testimony which supported Sergeant Buchanan's version of the fateful phone call. Whereas Bequette testified that he told Sergeant Spencer that Sergeant Buchanan *had* told him to view the body, Spencer testified that Bequette never stated that he had been ordered to view the body by his supervisor. After Bequette spoke with Spencer, Spencer called Buchanan to inquire why he had not instructed Bequette to finish the report. This is how Buchanan found out respondent was not going to the morgue and what prompted the controverted call. If, as Bequette alleged, he had told Spencer that Sergeant Buchanan had ordered him to view the body, there would have been no need for Spencer to call Buchanan, which he obviously did.