PERCY KENT BAG COMPANY,
Appellant,

v.

MISSOURI COMMISSION ON HUMAN RIGHTS, Respondent.

No. 63460.

Supreme Court of Missouri,
En Banc.

May 11, 1982.

Edward H. Sheppard, James D. Conkright, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel M. Dibble, Karen M. Iverson, Kansas City, amicus curiae.

SEILER, Judge.

Percy Kent Bag Company (Percy Kent) appeals an order of the Missouri Commission on Human Rights (Commission) which, after finding the company had engaged in discriminatory employment practices, ordered the company to cease and desist such discriminatory practices and to pay back pay to a discharged black employee. On appeal, Percy Kent contends that the order is erroneous because chapter 296, RSMo 1978 [1] (Employment Discrimination Prac-

tices) unconstitutionally delegates judicial powers to an administrative agency, thus denying appellant due process of law, and because the decision of the Commission is not supported by substantial and competent evidence.[2] Jurisdiction is in this court because the validity of a statute of this state is at issue. Mo.Const. art. V, § 3.

One purpose of chapter 296 is to avoid and eliminate "racial discrimination in employment in both the public and private sector." City of *St. Louis v. Missouri Commission on Human Rights*, 517 S.W.2d 65, 68–69 (Mo.1974); §§ 296.020, .030. To achieve this public policy, there must be some method of enforcement. 517 S.W.2d at 70. As was stated in *State Human Rights Commission v. Pauley*, 212 S.E.2d 77 (W.Va.1975):[3] "If our society and government seriously desire to stamp out the evil of unlawful discrimination which is symptomatic of unbridled bigotry, and we believe they do, then it is imperative that the duty of enforcement be accompanied by an effective and meaningful means of enforcement." *Id.* at 79. The Missouri Commission on Human Rights is the body charged with the "duty of enforcement" and has those powers necessary " 'to the proper discharge of its duties.' " *Harris v. Pine Cleaners, Inc.*, 274 S.W.2d 328, 332 (Mo.App. 1954). The "means of enforcement" adopted by the legislature include the power to order an employer to cease and desist discriminatory practices and to order the employer to pay .back pay to a wrongfully discharged employee. Although such an award will inure to the benefit of the discharged employee, it is incidental to the power of the Commission to enforce compliance with the policy of nondiscrimination in employment.

The procedures adopted by the legislature to implement this policy are as follows.[4] A

---

1. All statutory references are to RSMo 1978.

2. The appeal was originally filed in the court of appeals, western district, but was transferred before opinion on motion of the appellant.

3. The philosophy of *Pauley* was expanded in *State Human Rights Commission v. Pearlman*

*Realty Agency*, 239 S.E.2d 145 (W.Va.1977) which disapproved *Pauley* to the extent it limited incidental damages only to "out of pocket" expenses. *Id.* at 147.

4. Pursuant to § 296.030(6), the Commission has adopted rules and regulations to carry out

person who believes he has been aggrieved by discriminatory employment practices may file a verified complaint with the Commission. Section 296.040.1. The executive director of the Commission investigates the complaint and determines if there is probable cause "for crediting the allegations of the complaint, . . ." Section 296.040.2. If the director determines that probable cause exists, he must attempt "to eliminate the unlawful employment practice complained of by conference, conciliation, and persuasion." *Id.* If these attempts fail to eliminate the complained of practice, the chairman of the Commission serves notice on the respondent employer of a public hearing to answer the charges of the complaint, said hearing to be held before a panel consisting of three members of the Commission or before a hearing examiner who must be an attorney. Section 296.040.3. "The case in support of the complaint shall be presented before the hearing examiner or the panel by the office of the attorney general of the state of Missouri; neither the hearing examiner or any member of the Commission panel shall participate in the investigation, and the aforesaid endeavors at conciliation shall not be received in evidence." Section 296.040.4. The respondent employer may appear with an attorney at the hearing and present testimony. All testimony is taken under oath and transcribed. Section 296.040.5. After hearing and upon a finding that the employer has engaged in unfair employment practices, the panel shall issue findings of fact and conclusions of law and shall issue an order "requiring the respondent to cease and desist from such unlawful employment practice and to take affirmative action to require hiring, reinstatement or upgrading or restoration to membership in any respondent labor organization with or without back pay, as in its judgment will effectuate the purpose of this chapter, . . ."

Section 296.040.7. If the cause is heard by a hearing examiner, as was done here, the examiner shall issue findings of fact and conclusions of law and recommend a proposed order to the Commission. Section 296.040.8. The Commission then must review the record, findings, and proposed order after which it accepts, rejects, or amends the recommended order. A copy of the order of the Commission is delivered to the complainant, respondent, and the attorney general. Section 296.040.9. Procedures for judicial review of the Commission's order are set out at §§ 296.040.11, .050.2 and .3. Any person aggrieved by an order of the Commission may petition the circuit court for review. An appeal from the judgment of the circuit court to the appropriate appellate court may be taken. If no judicial review is sought, the Commission can obtain a court order from the appropriate circuit court to enforce the Commission's decision.

Following these procedures, complainant Willie C. Allen filed a complaint with the Commission on April 15, 1976 alleging that Percy Kent had terminated him because of his race in violation of § 296.020.1(1)(a).[5] The Commission issued a finding of probable cause, and attempted unsuccessfully to eliminate the alleged discriminatory employment practices by conference, conciliation, and persuasion. Following notice to Percy Kent, a hearing was held before a hearing examiner who issued findings of fact and conclusions of law. The hearing officer found that the assistant attorney general had proven by a preponderance of the evidence that Percy Kent had violated § 296.020.1(1)(a) by terminating Mr. Allen. He recommended that Percy Kent pay Mr. Allen back pay of $12,034.37, pay interest of 6% on the back pay award from April 8, 1976 (the date of discharge), and "cease and

the purposes of chapter 296. 4 CSR 180–1.010 to –3.080.

**5.** 1. It shall be an unlawful employment practice:

(1) For an employer, because of the race, creed, color, religion, national origin, sex, ancestry, or handicap of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, creed, color, religion, national origin, sex, ancestry, or handicap . . . .

desist from discriminating against blacks by disciplining them more severely than similarly situated white employees." The Commission adopted the hearing officer's recommended order in part, but did not order interest on the back pay award. Percy Kent petitioned the Cole County circuit court for judicial review of the Commission's order. On March 11, 1981, the circuit court affirmed the order of the Commission. This appeal followed.

■ Percy Kent argues that chapter 296 is facially unconstitutional because it delegates judicial power to an administrative agency thus violating the separation of powers doctrine of Mo.Const. art. II, § 1. This argument focuses on the discretionary power of the Commission to award back pay to the complainant if it deems such an award necessary "to effectuate the purposes of this chapter." Section 296.040.7. In the company's argument, this back pay award is seen as the equivalent of damages in a civil suit because the Commission can order one individual to pay money to another individual. Thus, goes the argument, giving the Commission power to award back pay is vesting an administrative agency with judicial power to adjudicate purely private rights.

To support this argument, Percy Kent relies principally on *State ex rel. Missouri Pacific Railroad v. Public Service Commission*, 303 Mo. 212, 259 S.W. 445 (1924), where the court held that the Public Service Commission (PSC) was without power to order the railroad to pay the complainant damages for charging an excessive rate. This, the court held, the PSC could not do because "[t]o determine whether one person is entitled to recover money from another by way of damages cannot be anything but a judicial question," *id.* 259 S.W. at 447, a function constitutionally reserved to the courts. The situation in *Missouri Pacific Railroad* differs from the instant challenge in several important respects. First, in *Missouri Pacific*, there was a question whether the legislature authorized the PSC to award any damages and thus the PSC action was ultra vires. In contrast, the Commission is

given express statutory authority to award back pay if, in its judgment, it determines such an award will "effectuate the purposes of this chapter . . . ." Section 296.040.7. Second, in *Missouri Pacific*, the legislature did not establish standards for the agency to apply to determine if damages should be awarded and the measure of damages, even if authorized. In contrast, the purpose of chapter 296 is set out at § 296.030(1), "[t]o seek to eliminate and prevent discrimination in employment," and the power of the Commission to award back pay is an incidental power to effectuate this public purpose. Section 296.040.7. Also, a back pay award differs from a civil suit damages award. A back pay award "may involve a monetary award, but such awards have specific limitations . . ." and is based on objective, easily ascertained information. *State Human Rights Commission v. Pauley*, 212 S.E.2d 77, 81 (W.Va.1975) (Berry, J., affirming the statutory authority of the West Virginia Human Rights Commission to award back pay to a victim of discrimination but dissenting to expansion of the Commission's authority, under the back pay provision, to include an award of compensatory damages). *See* note 3, *supra.* In the case at bar, evidence as to Allen's salary at the time of wrongful termination, his mandated salary increases, and his income earned from employment obtained after his termination was all introduced at the hearing. Once the Commission, in the exercise of its expertise has determined back pay should be part of the order, determining the amount of that award is a matter of simple arithmetic.

For the above reasons, reliance by Percy Kent on *Missouri Pacific* decided in 1924 to support its separation of powers constitutional argument is misplaced. But, more important, it fails to recognize the enormous changes that have occurred in the area of administrative law in this state and nationally during the intervening years. As was stated in *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940) in overruling a similar delegation of powers argument, "To hold that there was [an unconstitutional delega-

tion] would be to turn back the clock on at least a half century of administrative law." *Id.* at 400, 60 S.Ct. at 915. Both constitutional and decisional law reflect these changes.

Article II, § 1 of the Missouri Constitution provides:

> The powers of government shall be divided into three distinct departments— the legislative, executive and judicial— each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, *except in the instances in this constitution expressly directed or permitted.* (Emphasis added.)

One such "instance" is set forth in the 1945 Missouri Constitution in art. V, § 18 (formerly art. V, § 22).

> All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, *which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law*; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record. (Emphasis added.)

In this section, the framers of the 1945 constitution recognized the case law which had developed upholding the exercise of judicial powers by agencies and sought to ensure that when an agency does exercise judicial power that *affects* private rights (as is true here), the decision must be subject to review by the courts.

The court in *Harris v. Pine Cleaners, Inc.,* 274 S.W.2d 328 (Mo.App.1954), in addressing the argument that the Industrial Commission was without authority to determine a factual question because this was a "judicial power," exercisable only by the courts, stated that "[t]rue 'judicial power' vested in the courts by our constitution is the power

to 'decide and pronounce a judgment and carry it into effect....'" *Id.* at 333. *Accord, State ex rel. State Highway Commission v. Weinstein,* 322 S.W.2d 778, 784–85 (Mo. banc 1959); *In re City of Kinloch,* 362 Mo. 434, 242 S.W.2d 59, 63 (1951); *State ex rel. Keitel v. Harris,* 353 Mo. 1043, 186 S.W.2d 31, 33–34 (banc 1945); *Liechty v. Kansas City Bridge Co.,* 162 S.W.2d 275, 279 (Mo.1942). It is true that the Commission does exercise judicial functions. It determines if the respondent employer has discriminated against the complainant, and it determines what orders to issue. But it cannot "pronounce a judgment and carry it into effect;" only a court can enforce the Commission's order. A party aggrieved by the Commission's order may obtain judicial review of that order. Section 296.040.-11, .050.2 and .3. After review, there is a *judgment* from a court to be enforced. If a decision is not appealed, the Commission must obtain a court order to enforce the Commission's order. Section 296.050.4. Of course, the respondent, against whom an order has been issued, may comply voluntarily with that order.

The argument that a grant of a judicial function to an administrative agency is an unconstitutional delegation of judicial power has been made unsuccessfully in many contexts and in many jurisdictions. Professor Kenneth Culp Davis has summarized the current state of the law as follows:

> Agencies may not be delegated power to administer what is deemed to be criminal law, and agencies may not serve when juries are required. Except for those two clear propositions, federal courts throughout the twentieth century have allowed Congress to determine what judicial power to delegate to agencies. But some state courts have developed uneven and unstable law that occasionally forbids delegation of judicial power to agencies. The movement in the state courts is toward the federal view, ...

1 K. Davis, Administrative Law Treatise § 3.10, at 182 (2d ed. 1978).

Federal decisions reflecting the development of law in the area include *Reconstruc-*

*tion Finance Corp. v. Bankers Trust Co.*, 318 U.S. 163, 63 S.Ct. 515, 87 L.Ed. 680 (1943) where the court held that there was no unlawful delegation of judicial power to the Interstate Commerce Commission which was empowered by statute to fix maximum allowances for expenses, fees, and services in a bankruptcy proceeding, and *Beall Construction Co. v. Occupational Safety & Health Review Commission*, 507 F.2d 1041 (8th Cir. 1974), a challenge to the Occupational Safety & Health Act of 1970, where the court stated that "[t]he delegation of adjudicative functions to an administrative agency with special expertise in the subject matter, with the right of judicial review retained, does not violate the separation of powers principle found in Article III, § 1 of the federal constitution." *Id.* at 1045. In *Atlas Roofing Co. v. Occupational Health Safety & Health Review Commission*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Court held that in cases where public rights are being litigated and which do not involve purely "private rights" (as is true here), the seventh amendment does not prohibit Congress from assigning a fact finding function and initial adjudication to an administrative forum where a jury would be incompatible with the public policy. *Id.* at 450 and 450 n. 7, 97 S.Ct. at 1266 and 1266 n. 7. In *Atlas Roofing*, appellants had challenged the statutory scheme as violative of the seventh amendment right to jury trial, arguing that the determination of civil penalty liability was the same as "a suit at common law." *Id.* at 449, 97 S.Ct. at 1266. The court in *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937) held that an award of back pay was not the same as a suit at common law as used in the seventh amendment because the proceeding was purely statutory. There the Court stated that "[r]einstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." *Id.* at 48–49, 57 S.Ct. at 629.

Other states have interpreted a statutory provision similar to that of § 296.040.7, which provides that the Commission is "to take affirmative action to require rehiring ... with or without back pay ....," to authorize the award of compensatory damages by the agency in the appropriate cases. *E.g., Gilliam v. City of Omaha*, 331 F.Supp. 4 (D.Neb.1971); *rev'd on other grounds*, 459 F.2d 63 (8th Cir. 1972); *Jackson v. Concord Co.*, 54 N.J. 113, 253 A.2d 793 (1969); *State Human Rights Commission v. Pearlman Realty Agency*, 239 S.E.2d 145 (W.Va.1977). *See also, Kentucky Commission on Human Rights v. Fraser*, 625 S.W.2d 852 (Ky.1981) where the court found a statute authorizing the Kentucky Commission on Human Rights to award compensatory damages to the victim of discrimination was not an unconstitutional delegation of judicial power, and *Rosenthal v. Hartnett*, 36 N.Y.2d 269, 326 N.E.2d 811, 367 N.Y.S.2d 247 (1975), where the court found a statutory scheme authorizing administrative adjudication of traffic violation constitutional.

We hold that the legislature has not unconstitutionally delegated judicial powers to the Commission in violation of Mo.Const. art. II, § 1. The legislature has established standards for the Commission to apply; the back pay award is an appropriate remedy for enforcing the important public policy of eliminating racial discrimination in employment; the legislature has provided a check on the exercise of quasi judicial power by the Commission by providing that all decisions of the Commission can be reviewed pursuant to the provisions of chapter 536, the Administrative Procedure and Review Act. Sections 296.040.11, 296.050.2 and .3.

■ Next, Percy Kent alleges in conclusory terms that chapter 296 violates the due process of law guarantee of Mo.Const. art. I, § 10. Percy Kent asserts that it has been denied due process because determination of the discrimination action was decided in the first instance by an administrative agency rather than a court. For the following reasons, we hold that the statutory scheme of chapter 296, does not violate Mo. Const. art. I, § 10, either facially or as applied. "Due process does not necessarily mean judicial process." *Baxter v. Land Construction Co.*, 357 Mo. 58, 206 S.W.2d

325, 329 (1947). Where, as here, rights of specific parties are affected by an administrative decision, "due process requires a hearing 'at some stage before the proceedings become final,'" *State ex rel. Leggett v. Jensen*, 318 S.W.2d 353, 358 (Mo. banc 1958), but Percy Kent was given a hearing of which it had notice. It presented witnesses and cross examined the attorney general's witnesses. Percy Kent received review of the Commission's decision by the circuit court and appeal in this court. There is no merit in the argument that Percy Kent is guaranteed a judicial hearing.

Because of our ruling on the constitutional arguments, it is necessary to address Percy Kent's argument that the Commission's order is not supported by substantial and competent evidence on the whole record.

The Commission concluded that "Plaintiff established a prima facie violation of Section 296.020(1)(a), RSMo 1969, as amended, by showing complainant is black and that he was disciplined more severely than a similarly situated white employee who had used abusive language toward management personnel, . . ." Then, "Respondent articulated two reasons for the complainant's termination: (1) Allen's failure to comply with supervisory instructions or orders; and (2) Allen's use of abusive language," but "[b]oth reasons articulated by Respondent are pretextual. Complainant's race was a factor in the decision to terminate him." Therefore, the Commission concluded "Plaintiff has proven by a preponderance of the evidence that Respondent violated Section 296.020(1)(a), RSMo 1969, as amended by terminating Complainant on April 8, 1976."

In support of the above conclusions of law, the Commission found the following facts. Complainant Willie C. Allen was one of two employees employed by Percy Kent in its printing and engraving shop and had been so employed for about five and one-half years. During this time his work had been satisfactory and he had received no reprimands or other disciplinary action. Rubber scraps from the engraving shop had been found on the floor of the production area prior to the incident which resulted in the firing of Allen. This was considered to constitute a safety hazard. On April 5 and April 7, 1976, George Hazlett, the production manager, saw Allen make throwing motions from the printing area towards the production area and saw two co-employees duck. On April 8, 1976, Hazlett and William Perry, supervisor of quality control, were walking through the plant when Perry slipped on a ball made of rubber scraps "similar" to the rubber used only in the engraving department. On the event that led to termination of Allen and initiation of this action, the Commission found:

12. On April 8, 1976, immediately after finding the object [rubber scrap ball] on the floor, Hazlett went to the engraving room where Allen was working at the vulcanizing press.

When Hazlett arrived, Allen was timing a mold in the press which had to be released at a certain time to prevent the rubber from curing.

Hazlett interrupted Allen's work and accused the Complainant of throwing the object. Complainant Allen denied having thrown the object and had not, in fact, thrown it.

Hazlett repeated his accusations and told Allen that if it ever happened again, disciplinary action would be taken against Allen. Hazlett intended to take no formal disciplinary action against Allen for allegedly throwing the object, other than a verbal reprimand.

When Hazlett pointed his finger near Allen's face and repeated his accusations asking "do you hear me?", Allen said, "fuck you, George".

During the conversation between Hazlett and Allen, William Perry and Tony Mroz were present in the engraving room approximately ten feet from Hazlett and Allen. Despite his closeness to Hazlett and Allen, Perry could not overhear any of the conversation except Allen's final remark, "fuck you George".

Hazlett then left Allen's work area, talked with the company president and

decided to terminate Allen. Allen was informed of the decision approximately thirty to forty-five minutes later in Hazlett's office.

13. Plaintiff introduced evidence of an incident in 1975, involving a white, hourly employee of Respondent, Hayward Schick. It was not disputed by Respondent that Schick said to his supervisor, William C. Perry, "you're a goddam liar".

In addition to the use of abusive language, Schick also refused to do work assigned as evidenced by Plaintiff's Exhibit # 16.

Despite the presence in Schick's personnel file of two prior disciplinary action records, Plaintiff's Exhibit # 14 and Plaintiff's Exhibit # 15, George Hazlett permitted a thirty-day cooling off period before deciding what disciplinary action to take against Schick. After the cooling off period had passed, Schick was suspended for three days, but then returned to work and was still employed by Respondent on March 15, 1979.

14. Hazlett articulated two reasons for the Complainant's termination: (1) Allen's failure to comply with supervisory instructions or orders; and (2) Allen's use of abusive language.

15. The first reason specified in the preceding paragraph is pretextual. Hazlett's testimony was that to his knowledge, Allen had not been warned about throwing objects in the plant prior to April 8, 1976. At the time of the incident on April 8th, Hazlett's unjustified accusations of Allen contained instructions to the effect that objects were not to be thrown in the plant and any future violations of the instructions would result in disciplinary action. Since the decision to terminate Allen was made within minutes of his conversation with Hazlett, there was little opportunity for him to fail to comply with Hazlett's instructions. We expressly find that Allen did not fail to comply with Hazlett's instructions.

16. The second reason specified in Paragraph 14 is also pretextual. Hazlett testified without contradiction that no employee of Respondent had been terminated solely for the use of abusive language. There is evidence that disciplinary action less drastic than termination was given to Hayward Schick for refusing to do work assigned and for calling his supervisor a "goddam liar".

17. Under the circumstances of Willie Allen's confrontation with George Hazlett, Allen's use of the phrase, "fuck you, George", was certainly no more offensive, and possibly less offensive, than Hayward Schick's calling William C. Perry "a goddam liar".

In addition, Hazlett's unsupported belief that Allen was sensitive about his race is evidence, in itself, that Allen's race was a factor in Hazlett's decision to terminate him instead of treating him the same as Schick was treated.

The role of the reviewing court is set out at Mo.Const. art. V, § 18 and provides that review of a judicial or quasi judicial decision which affects private rights (*i.e.*, contested case) "shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." *See* Rule 100.07; *Hermel, Inc. v. State Tax Commission*, 564 S.W.2d 888, 894 (Mo. banc 1978); *McNeal v. Bequette*, 571 S.W.2d 657, 658 (Mo.App.1978). Although this court "may have decided the case differently as an original proposition, we, as well as the trial court, must defer to the administrative tribunal's findings of fact. Neither a circuit court nor an appellate court may substitute its judgment for that of the administrative board." *McNeal v. Bequette, supra*, 571 S.W.2d at 658.

Because the Commission's findings outlined above were supported by competent and substantial evidence on the whole record, the order of the Commission is affirmed.[6]

6. Comment should be made on Percy Kent's argument that the Commission refused to consider evidence of the termination of a white employee for use of abusive language. This

MORGAN, HIGGINS and BARDGETT, JJ., concur.

DONNELLY, C. J., and RENDLEN and WELLIVER, JJ., concur in result.

incident occurred in 1977, *after* the termination of complainant Allen. If this evidence were considered, an employer could immunize itself, after the fact, from any legitimate discrimination complaint.