BARNES HOSPITAL,
Plaintiff-Respondent,

v.

MISSOURI COMMISSION ON HUMAN
RIGHTS, Defendant-Appellant,

and

Willard Reeves, Complainant-Intervenor.

No. 64813.

Supreme Court of Missouri,
En Banc.

Dec. 20, 1983.

Dennis G. Collins, Larry B. Luber, Gerald Richardson, St. Louis, Kelly Pool, Jefferson City, for plaintiff-respondent.

Maureen E. Laflin, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

GUNN, Judge.

This appeal involves a charge of employment discrimination.

Complaint to the Commission on Human Rights (Commission) was filed by an employee alleging racial discrimination as reason for his discharge by his employer, Barnes Hospital. After hearing, the Commission found wrongful discrimination in the discharge and ordered the employee restored to employment with backpay.[1]

Appeal by Barnes Hospital to the Cole County Circuit Court resulted in reversal of the Commission's order. The circuit court specifically found that the Commission's decision lacked competent and substantial evidence on the whole record to support it. The Commission and employee then appealed the circuit court's decision.

In a cross-appeal Barnes Hospital raises a constitutional issue. It contends that Chapter 296, specifically § 296.010(2), RSMo 1978, is unconstitutional and discriminates by removing religious and sectarian corporations and associations from application of its provisions. It is the constitutional question which has lodged the appeal in this Court.

We affirm the decision of the circuit court rejecting the employee's claim. We need not reach the constitutional issue raised by Barnes Hospital, for the case may be determined on the question of sufficiency of evidence. *State ex rel. K.C. v. Gant,* 661 S.W.2d 483 (Mo. banc 1983).

*Percy Kent Bag Co. v. Missouri Commission on Human Rights,* 632 S.W.2d 480 (Mo. banc 1982) indites the proper scope of judicial review in an administrative proceeding:

The role of the reviewing court is set out at Mo. Const. art. V, § 18 and provides that review of a judicial or quasi judicial decision which affects private rights (*i.e.,* contested case) "shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." *See* Rule 100.07; *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 894 (Mo. banc 1978); *McNeal v. Bequette,* 571 S.W.2d 657, 658 (Mo.App.1978). Although this court "may have decided the case differently as an original proposition, we, as well as the trial court, must defer to the administrative tribunal's findings of fact. Neither a circuit court nor an appellate court may substitute its judgment for that of the administrative board." *McNeal v. Bequette,* supra, 571 S.W.2d at 658.

*Id.* at 487.

*See also Ross v. Robb,* 662 S.W.2d 257 (Mo. banc 1983).

However, the stricture against substitution of judgment on the evidence does not transfer with the reviewing court's authorization "to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence." *Michler v.*

1. The Commission found in favor of Barnes Hospital in the employee's contention of retaliation for his filing of a complaint.

*Krey Packing Co.,* 363 Mo. 707, 253 S.W.2d 136, 141 (banc 1952).

Applying the foregoing principles, we find that the Commission's findings were not supported by competent and substantial evidence on the whole record. Thus, the Commission's decision finding racial discrimination against the employee must be reversed and the judgment of the circuit court affirmed.

The facts are these: Willard Reeves, the employee, was employed as a laboratory technician by Barnes Hospital on May 8, 1968. In 1976 he received a bachelor of science degree in health care and administration and was promoted to the position of certified medical technologist. Reeves was assigned to the blood bank unit of Barnes Hospital and was responsible for cross-matching units of blood for determination of compatibility between the stored units and those of patients requiring transfusions.

Until April 1977, Reeves' work record was faultless, but thereafter his work habits deteriorated and supervisory reports indicated some inconsistencies: "[he does] excellent work, although not always consistent due to the fact the shift he works doesn't always have two technicians and emergencies interfere with the type of work done"; "[o]ver the course of the years Mr. Reeves has shown a fair amount of inconsistency in his work and has been orally counseled on a number of occasions for lack of attention to detail."

A supervisory employee, Don Marlo, testified as a Commission witness and acknowledged more than whilom friendship with Reeves. Marlo related that during 1978–79, he was required to counsel with Reeves more than any other employee because of his poor working habits. Marlo further testified that Reeves had made three cross-matching errors on blood matchings, any one of which could have serious health con-

sequences to the person receiving the blood. He was given oral reprimand for each of these errors. On one occasion, Reeves also failed to report for work or make provision for a replacement as required by work rules. He compounded this fault by refusing to appear at a supervisory meeting regarding his failure to follow proper work procedures.

After the third blood cross-matching error occurring within six months and which involved an infant female and resulted in the transfusion of the wrong type of blood to the baby, Reeves was given notice of dismissal. The transfusion of the wrong blood was life threatening and required the infant to undergo a complete blood transfusion.

Barnes Hospital's personnel director and other officials stated that the basis of discharge was the accumulation of a series of erratic and faulty work performances—failure to report for work and provide for a replacement, failure to meet with his counselor, the numerous counseling requirements, negative performance evaluations and the three cross-matching errors occurring within a six months period. Reeves' work record was substantially tarnished and provided the justification for discharge.

The hospital denied any racial motivation in its firing of Reeves.[2]

Reeves contends discrimination by reason of disparate treatment of other employees who had committed blood cross-matching or issuing errors. Two white employees and one black employee were only suspended or reprimanded for what Reeves argues were errors similar to those he committed, whereas he and another black were discharged. Details of the comparisons need not be given. It is sufficient to note that in each instance the circumstances leading to disciplinary action of the five employees were dissimilar,[3] and Commission efforts to

---

**2.** Barnes Hospital's employment practices appear to belie racial discrimination. Of its total work force of approximately 4,300 employees, 39% are black. Fifty percent of the supervisory and staff positions in the laboratory in which Reeves worked are black.

**3.** The employees had either spotless work records and were excellent employees in every regard, or, in one instance, it was the employee's first offense and because of her lower educational background and position was held to lesser standards.

demonstrate discrimination by disparate treatment in relation to other employees were unavailing. The evidence fails to establish that Barnes was guilty of any discriminatory practices in this case.

Reeves readily acknowledged the gross error involving the infant girl, but he equivocated as to the other two cross-matching mistakes. He also acknowledged his work rules violations of failing to report for work and counseling and failing to arrange for a work substitute. Several Barnes officials testified regarding the three cross-matching errors, but when he was interrogated regarding two of the errors and whether he had in fact made them, Reeves stated that "to his knowledge" he had not committed the mistake.

In its findings and conclusions the Commission recited that it chose to believe Reeves and that he had not committed two of the three erroneous cross-matches. The Commission also recited that it chose not to believe Barnes' officials testifying that Reeves had committed all three errors.

■ Indeed, the Commission's function is to determine credibility of the witnesses. *Edmonds v. McNeal,* 596 S.W.2d 403, 408 (Mo. banc 1980). But in this instance the Commission has indulged itself too much latitude in choosing to disbelieve the evidence regarding two of the three errors, for evidence of all three errors came from its key witness, Don Marlo.

Marlo was called at the behest of the Commission, and his testimony was ostensibly calculated to establish the charge of discrimination. Instead, Marlo related the circumstances of each of the three errors and Reeves' overall poor work performance serving as a basis for discharge. Marlo's testimony was consistent and uncontradicted. To side-step its witness' (Marlo) testimony, the Commission chose to disbelieve it. But that leaves nothing to support any discrimination.

■ Although the Commission as trier of fact may judge the credibility of the witnesses and therefore choose to disbelieve one side or the other, that choice does not

exist here to provide the sound basis for the Commission's decision. From the Commission's witness came positive testimony of three cross-matching errors. From Reeves came only what can be described as an evasive equivocation in this particular circumstance. The "not to my knowledge" response to a direct question as to the cross-matching errors can only be described as hedging under the circumstances. And an evasive and equivocal answer so attenuates Reeves' testimony as to deprive it of any probative value. *Galovich v. Hertz Corp.,* 513 S.W.2d 325, 335 (Mo.1974); *Gilpin v. Pitman,* 577 S.W.2d 72, 81 (Mo.App.1978); *Thienes v. Harlin Fruit Co.,* 499 S.W.2d 223, 227 (Mo.App.1973). Reeves' comment under the circumstances was not the "clean cut" statement of denial which could have been given. *See State v. Crumby,* 629 S.W.2d 438, 439 (Mo.App.1981).

■ The legal rubric recited at the inception requires that to uphold the Commission there must be a finding that its decision is supported by substantial evidence. *Percy Kent Bag Co.,* 632 S.W.2d at 487. And "substantial evidence" is "competent evidence which, if believed, would have probative force on the issues." *Citizens for Rural Preservation, Inc. v. Robinett,* 648 S.W.2d 117, 124 (Mo.App.1982).

The Commission has chosen to disregard substantial and undisputed testimony including that of its own witness, Don Marlo. It has ignored the evidence pertaining to Reeves' poor work record—evidence which Reeves does not deny except by a non-probative equivocal response regarding two miscross-matches. The Commission's order pertaining to credibility addresses only the cross-matching mistakes. That forms no proper basis to disregard evidence of Reeves' poor working habits or for a finding of substantial evidence to support the Commission's order. *State ex rel. Kahler v. State Tax Commission,* 393 S.W.2d 460, 465 (Mo.1965). *See Stevinson v. Labor & Industrial Relations Commission,* 654 S.W.2d 373, 374 (Mo.App.1983) (administrative agency may not arbitrarily ignore testimony of a

witness not shown to have been disbelieved).

■ All the evidence presented was to the effect that Barnes Hospital was not guilty of any discriminatory practices. When the Commission chose not to believe any of the witnesses, including its own, and relied only on Reeves, it had nothing on which to reach a conclusion of discrimination. Reeves' testimony either fully supported the substance of Barnes' complaints against him and his inferior work habits, or it was so equivocal and evasive as to be without value. Comparisons of treatment of other employees revealed no discriminatory practices. That situation leaves the Commission's ruling as being contrary to and unsupported by the evidence. It cannot stand. *General Motors Corp. v. Fair Employment Practices Division,* 574 S.W.2d 394, 399 (Mo. banc 1978).

■ The Commission adopted the Hearing Examiner's report, analyzing the case in terms of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There is an indication of approval of this holding in *General Motors Corp. v. Fair Employment Practices Division, supra.* By this analysis the plaintiff made out a prima facie case by showing that he was within the class sought to be protected by the statute, that he was discharged, and that there was some evidence from which it could be inferred that his race was a factor in the discharge. The Commission found the latter factor present because some white employees who had been involved in similar mistakes were not discharged. The burden would then shift to the respondent to articulate a legitimate non-discriminatory reason for the discharge, which burden was certainly met by the showing that the complainant had committed an error portending serious health consequences. The Commission found, however, that the explanation was a pretext because of the evidence that others making similar errors were not terminated. As has been seen, however, the Commission's own uncontradicted evidence shows that there were significant distinguishing factors as to these other employees. No indication of discrimination remains.

Applying the appropriate standard of appellate review recited, we find that the Commission's finding of racial discrimination is arbitrary and is not supported by competent and substantial evidence. The judgment of the circuit court reversing the Commission's decision is affirmed. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 897 (Mo. banc 1978); *R.T. French Co. v. Springfield Mayor's Commission,* 650 S.W.2d 717 (Mo.App.1983).

Judgment affirmed.

RENDLEN, C.J., WELLIVER, HIGGINS, BLACKMAR and DONNELLY, JJ., and HOUSER, Senior Judge, concur.

BILLINGS, J., not sitting.