**Wendell SWENSON and Alice Swenson, Respondents,**

v.

**ELMS TIMESHARING INTERVALS, INC., The Elms Redevelopment Corporation and The Elms Hotel Operating Company, Appellants.**

No. WD 47463.

Missouri Court of Appeals,
Western District.

Sept. 13, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Application to Transfer Denied
Dec. 20, 1994.

Clyde G. Meise, W. Edward Coen, Jr., Kansas City, for appellants.

H. George Lafferty, Jr., Kansas City, for respondents.

Before LOWENSTEIN, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Elms Timesharing Intervals, Inc., The Elms Redevelopment Corporation, and The Elms Hotel Operating Company [1] appeal a $1 million jury verdict for Wendell and Alice Swenson in a personal injury suit. The Swensons sued for injuries to Wendell Swenson caused by a light fixture's falling at The Elms Hotel and hitting Swenson in the head while he showered. The Elms alleges several points of error in the trial. We agree that the trial court erroneously instructed the jury. We, therefore, reverse the trial court's judgment and remand for a new trial.

The mishap occurred on August 9, 1990, while the Swensons were staying in a room at The Elms Hotel in Excelsior Springs. The facts, in a light most favorable to the jury's verdict, were that Swenson was hit in the head and suffered an electrical shock when a ceiling canister light fixture fell into the shower where he was bathing. Swenson was standing in the stream of water when the fixture hit him on the back of his head. He did not know what hit him; he instinctively responded by hitting at the object. In doing so, he suffered an electrical shock for five to ten seconds.

His wife, Alice, heard him scream and then heard a crash. When she opened the bathroom door, the shower door had fallen, and her husband was lying on it. His feet were in the shower, and his head was on the bathroom floor. The light fixture hung by a wire from the ceiling over the shower.

She called hotel staffers who summoned an ambulance. Wendell Swenson was admitted to the Excelsior Springs Hospital where he spent the night in the intensive care unit.

His hospital treatment ended the next morning. The family's physician testified that Swenson continued to suffer debilitating injuries which he attributed to Swenson's being shocked.[2]

Wendell Swenson had been a sheet metal worker for 20 years before the mishap. He did not return to work until January 4, 1991, but he felt able to do only light duty work. He worked until November 22, 1991, when he decided he could no longer do the job. Although he has applied for other jobs, he has not worked since that date. His doctors told him that he cannot work in the sheet metal or construction industry because of his injuries.

The Elms complains that the trial court erred in its verdict-directing instruction. The instruction said:

Your verdict must be for plaintiff Wendell Swenson and against defendants Elms Timesharing Intervals, Inc., The Elms Redevelopment Corporation and The Elms Hotel Operating Company, if you believe:

First, the light fixture in the shower was either:

not securely fastened to the shower ceiling or was not properly grounded,

and as a result the shower was not reasonably safe, and

Second, defendants knew or by using ordinary care should have known of this condition, and

Third, defendants failed to use ordinary care to correct said condition or to warn of it, and

Fourth, as a direct result of such failure, plaintiff Wendell Swenson sustained damage.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

---

1. For the reader's ease, we refer to the appellants collectively as the Elms.

2. Throughout the trial, the Swensons' lawyer referred to the incident as an "electrocution." The Elms did not object to this characterization although the ordinary meaning of "electrocution" is "the act of killing or putting to death by electrical current." Webster's Third New International Dictionary 732 (unabridged 1971).

The Elms contends that this verdict director was erroneous because it was not supported by substantial evidence. We agree.

"It is error to submit a theory that is not proven or supported by substantial evidence." *Spring v. Kansas City Area Transportation Authority*, 873 S.W.2d 224, 226 (Mo. banc 1994). The instruction's first paragraph posed two, alternative theories on which the jury could base liability: The fixture was either "not securely fastened to the shower ceiling or was not properly grounded[.]" Both theories had to be supported by substantial evidence.

The Elms contends that no evidence supported the instruction's hypothesizing improper grounding. While we disagree that the record contained "no evidence," we agree that the Swensons did not submit substantial evidence.

Substantial evidence is " 'competent evidence which, if believed, would have probative force on the issues.' " *Barnes Hospital v. Missouri Commission on Human Rights*, 661 S.W.2d 534, 537 (Mo. banc 1983) (quoting *Citizens for Rural Preservation, Inc. v. Robinett*, 648 S.W.2d 117, 124 (Mo.App.1982)). Evidence having a probative force is that which induces reasonable people to a conviction concerning the matter at issue. To prevail, a plaintiff must present evidence which removes an issue "from the realm of rank conjecture and surmise[.]" *Bridgeforth v. Proffitt*, 490 S.W.2d 416, 422 (Mo.App.1973).

The only evidence that the fixture was not grounded was offered by Swenson's expert, Ross Forte, who testified that when he looked at the fixture two months after the incident, it was not grounded. The Swensons mischaracterize the testimony of another witness, Larry Swoboda who was with Forte when he examined the fixture, as establishing that "the fixture was in exactly the same condition [two months later] as it had been on the night of the accident." Swoboda testified in response to inquiry by the Swensons' attorney:

Q: So [the light fixture] was in the same condition [two months later], wasn't it?

A: Uh, you know the ground part of it, it's questionable there whether it was or not. As many times as it was pulled in and out at that night of the incident.

Q: Well, as far as you know, was there any difference?

A: The grounding part, I don't know. I didn't see it that night, whether it was grounded or not myself.

Q: Alright. So what you're saying is you, you put a light fixture back up in there that was not properly grounded and was there still [two months later], is that what you're saying?

A: I'm saying I don't know, I'm not aware of it myself if it was properly grounded at that time when I replace it or not.

The Swensons also point to a third-party pleading in which the Elms averred against the light fixture's manufacturer that the fixture was defectively designed or manufactured by virtue of not having proper grounding. Even if this were an admission as the Swensons assert, the trial court did not permit the jury to consider it, and the Swensons did not appeal the ruling. Hence, we do not factor it into our consideration.

Thus, the only evidence supporting the hypothesis that the fixture was not properly grounded on August 9, 1990, was Forte's finding that condition two months later. In the absence of special circumstances, existence of a condition does not, by itself, establish a presumption that the same condition existed previously. *Conduitt v. Trenton Gas & Electric Company*, 326 Mo. 133, 31 S.W.2d 21, 26 (1930); *see generally Brock v. Gulf, Mobile and Ohio Railroad Company*, 270 S.W.2d 827, 829 (Mo.1954);

Nothing about the circumstances of this case suggest that the trial court should have deviated from this rule. The light fixture had been taken down and examined several times before Forte looked at it. The only direct evidence on the issue was that the fixture was grounded on the night Swenson says it shocked him.

Substantial evidence, therefore, did not support the improper grounding theory. The trial court erred in submitting a verdict directing instruction to the jury in which that

theory was hypothesized. Because we reach this conclusion we need not address the other points raised by the Elms. We reverse the trial court's judgment and remand for a new trial.

All concur.